WESTPORT BANK AND TRUST COMPANY v. CORCORAN, MALLIN AND ARESCO ET AL.
(14307)

SHEA, GLASS, COVELLO, BORDEN and BERDON, Js.

Argued October 30, 1991—decision released March 31, 1992

*Richard J. Diviney,* for the appellant (plaintiff).

*Arnold J. Bai,* with whom were *Andrew S. Turret* and, on the brief, *J. Jeffrey Coughlin,* for the appellees (named defendant et al.).

BORDEN, J. The issue in this appeal is whether a lender may hold its attorney liable for a negligent title search and subsequent issuance of an erroneous title opinion letter to the lender when that attorney also represents the borrower. The plaintiff, Westport Bank and Trust Company, brought suit against attorney John R. Mallin and the law firm of Corcoran, Mallin and Aresco (defendants),[1] alleging, in count one, breach of its attorney-client contract with the defendants[2] and,

---

[1] The plaintiff also, in count two, set forth a claim against American Title Insurance Company, which is not involved in this appeal.

[2] In count one, the plaintiff also alleged that it was the third party beneficiary of the attorney-client contract between the borrower and the defendants. Since we conclude that the plaintiff has stated a cause of action by

in count three, legal malpractice by the defendants. The trial court, *Licari, J.,* granted the defendants' motion to strike the first and third counts of the plaintiff's amended complaint. The plaintiff appealed from the subsequent judgment, *Spear, J.,* to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023. We now reverse.

The complaint alleged the following facts. In January, 1988, the plaintiff approved the loan application of Charles L. Munigle, individually and doing business as MKP Westport (Munigle). The plaintiff issued a commitment letter to Munigle for a $225,000 construction loan subject to Munigle's granting a second mortgage to the plaintiff on two adjoining parcels of land that he owned, known as lots 5 and 6 on Cross Highway in Westport. In February, 1988, after accepting the plaintiff's loan commitment, Munigle retained the defendants to provide certain legal services in connection with the loan, including searching the title of lots 5 and 6, preparing loan closing documents, and issuing to the plaintiff a title opinion and securing a title insurance policy for the plaintiff.

The complaint further alleged that the plaintiff sent an "Order For Title Search" directly to the defendants requesting them to search the title to the property and to issue a title opinion letter to the plaintiff. The defendants then conducted a title search on the lots, prepared loan closing documents, conducted the loan closing and issued a title opinion letter directly to the plaintiff, representing that the lots were unencumbered except for a preexisting first mortgage, and that the plaintiff's mortgage would be a valid second mortgage on the lots. In reliance on that letter, the plaintiff granted the

its claim of a direct attorney-client contract with the defendants and since the trial court did not directly address this claim in its second decision, we need not consider this allegation.

$225,000 loan to Munigle and accepted a mortgage on the lots from Munigle.

The complaint also alleged that, in May, 1989, Munigle sold lot 5, and that the plaintiff discovered that its mortgage on lots 5 and 6 was actually a third mortgage that was subordinate to a second mortgage held by United Bank and Trust Company (UBTC). The plaintiff had not been advised of UBTC's second mortgage in the title opinion letter. The sale proceeds from lot 5 fully satisfied the first mortgage and partially satisfied UBTC's second mortgage. No portion of the sale proceeds, however, was available to satisfy any part of Munigle's $225,000 debt to the plaintiff.[3] In January, 1990, the first mortgagee foreclosed its mortgage on lot 6 and the lot was sold at a public auction. Due to the plaintiff's unintended third mortgagee position, the sale proceeds were insufficient to reduce the remaining debt owed by Munigle to the plaintiff.

The plaintiff's initial complaint alleged that the defendants were negligent in their title search and that the plaintiff was harmed by that negligence. The trial court granted the defendants' motion to strike the plaintiff's complaint, noting that "[n]o reading of the complaint, even in the broadest permissible sense, establishes directly or by inference an attorney-client relationship between the plaintiff and moving defendants. Nor does the complaint, read in the same fashion, contain the essential allegation that the defendants intended to assume a direct obligation to the plaintiff as required by *Stowe* v. *Smith,* 184 Conn. 194, 196 [441 A.2d 81] (1981). These facial inadequacies alone warrant the striking of this complaint."[4]

---

[3] The plaintiff did receive from its title insurance carrier a partial payment upon the sale of lot 5.

[4] The court proceeded, nonetheless, to discuss certain policy reasons, discussed infra, that in its view required that the motion to strike be granted.

Thereafter, the plaintiff filed an amended complaint. In count one of the amended complaint, the plaintiff alleged that the defendants had breached their attorney-client contract with the plaintiff. In count three, the plaintiff alleged that, in performing their contract with the plaintiff to provide legal services, the defendants had been negligent in that they had assumed a duty to the plaintiff to exercise reasonable care when conducting the title search, and that the defendants had breached this duty by failing to discover UBTC's existing second mortgage on lots 5 and 6, by failing to advise the plaintiff of such a mortgage in the title opinion letter, and by failing to perfect the second mortgage lien for the plaintiff.

The trial court granted the defendants' motion to strike the first and third counts of the plaintiff's amended complaint, noting that "[w]hile the amended complaint has addressed the facial inadequacies previously noted by this court . . . this court still concludes that as a matter of law, in light of public policy, the amended complaint also fails to state a recognizable cause of action in either challenged count."[5] The refer-

---

[5] The parties have briefed and orally argued this appeal as if the plaintiff had not alleged an attorney-client relationship in its amended complaint. Instead, the plaintiff, in its brief and in oral argument, put forth arguments for holding an attorney liable to a nonclient. While the plaintiff may have framed the issue in such a fashion, the trial court, recognizing that the amended complaint cured the facial inadequacies in the first complaint, interpreted the amended complaint as alleging an attorney-client relationship. Indeed, the first count of the amended complaint alleged that "[a]s a result of the foregoing breach of Attorney Mallin's and CM&A's contractual duties to [the] Plaintiff, directly . . . the Plaintiff has sustained monetary damages," and the third count of the amended complaint alleged that "[t]he defendants breached their duty of care to the plaintiff by their negligent and careless" conduct regarding the UBTC mortgage. These allegations, as amplified in further detail in the complaint, clearly alleged, in count one, a breach of a direct attorney-client contract and, in count three, the tort of legal malpractice by an attorney with respect to his client. We therefore decide the merits of the case on the basis of the actual language of the pleadings and the trial court's understanding of those pleadings.

ence to "public policy" involved the discussion by the trial court in its memorandum of decision on the defendants' first motion to strike. See footnote 4, supra. The court had noted in its previous decision that " 'courts have refrained from imposing liability [on an attorney] when such liability has the potential of interfering with the ethical obligations owed by an attorney to his or her client.' " The court had also concluded previously that in this case there was "serious potential for conflicts of interest if an attorney is required to serve two masters," namely, the borrower and the lender. The court had further noted that "[t]his court does not know of an area more filled with potential conflicts of interest than the area of lender and borrower relationships. Our dockets are filled with instances where such relationships have broken down. Collection actions and foreclosures crowd our dockets."

The plaintiff claims that the trial court improperly granted the defendants' motion because, in this particular case, the public policy concerns for protection of an attorney's undivided loyalty to his client do not exist. The defendants claim that the trial court properly granted their motion because liability should not arise in this case due to the potential conflicts of interest when an attorney represents two clients. We agree with the plaintiff.

"A motion to strike challenges the legal sufficiency of a pleading." *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 108, 491 A.2d 368 (1985). In reviewing the granting of a motion to strike, we take the facts alleged in the plaintiff's complaint and construe the complaint in the manner most favorable to the plaintiff. *Mozzochi* v. *Beck,* 204 Conn. 490, 491, 529 A.2d 171 (1987). " 'This includes the facts necessarily implied and fairly provable under the allegations. . . . It does not include, however, the legal conclusions or opinions stated in the complaint. . . .' " *Coste* v. *Riverside Motors, Inc.,* 24

Conn. App. 109, 111, 585 A.2d 1263 (1991); see *Amodio* v. *Cunningham,* 182 Conn. 80, 83, 438 A.2d 6 (1980). If facts provable in the complaint would support a cause of action, the motion to strike must be denied. *Stradmore Development Corporation* v. *Commissioners,* 164 Conn. 548, 550–51, 324 A.2d 919 (1973).

Rule 1.7 of the Rules of Professional Conduct sets forth the general rule on conflicts of interest in an attorney-client relationship.[6] Rule 1.7 (a) states in pertinent part that a "lawyer shall not represent a client if the representation of that client will be directly adverse to another client, *unless* . . . [t]he lawyer reasonably believes the representation will not adversely affect the relationship with the other client . . . and . . . [e]ach client consents after consultation." (Emphasis added.) In the present case, the complaint alleges that the defendants were ordered by Munigle, pursuant to their attorney-client agreement with Munigle, to conduct a title search and issue a title opinion letter directly to the plaintiff. Thus, the allegations of the complaint, construed in favor of the plaintiff, would permit proof that Munigle consented to the defendants' representation of him even though the defendants also represented the plaintiff.

---

[6] Rule 1.7 of the Rules of Professional Conduct, entitled "Conflict of Interest: General Rule," provides as follows: "(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

"(1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

"(2) Each client consents after consultation.

"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

"(1) The lawyer reasonably believes the representation will not be adversely affected; and

"(2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall

Furthermore, the complaint would permit proof that the defendants could have reasonably believed, when they were initially retained by Munigle, that their representation of the plaintiff would not adversely affect their relationship with Munigle. In Connecticut, banks often rely on the skill and judgment of a single loan closing attorney to conduct a title search and issue a title opinion. See, e.g., T. Witherspoon, E. Sostman & P. Culver, Basic Real Estate Law in Connecticut (1988) p. 44. Many loan transactions occur every day, without incident, in which a single attorney searches the title and issues a title opinion. Indeed, when an attorney conducts a title search on behalf of a lender and a borrower, both the lender and borrower have similar interests in obtaining an accurate title opinion letter. The lender seeks an accurate opinion letter so that its loan may be adequately secured. The borrower also seeks an accurate opinion letter so that it may procure the loan from the lender and learn of any encumbrances that would affect title to the property. The two parties seek the same result, namely, that no encumbrance on the property will interfere with the granting of the loan. This supports the view that an attorney could reasonably view his relationship with the lender and borrower as nonadversarial. Moreover, the Connecticut Bar Association has "sanctioned the practice of a single attorney representing multiple parties, including a mortgage lender and borrower, in a real estate transaction where there is no actual conflict of interest and where there has been full disclosure and consent of the parties with respect to representation by the single attorney. Informal Opinion 1-74 (1974); see CBA Formal Opinion No. 30 (1978) for a discussion of the issues involved." Connecticut Bar Association Committee on Professional Ethics, Informal Opinion 83-25 (1983).

include explanation of the implications of the common representation and the advantages and risks involved."

The defendants argue, as the trial court reasoned, that there is a potential for a conflict of interest. "A possible conflict[, however,] does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved." Rules of Professional Conduct, Rule 1.7, comment. As we stated earlier, in the initial stages of a loan transaction, the lender and borrower have similar interests in securing an accurate title opinion letter. If an unforeseen conflict arises after representation has been undertaken, an attorney should withdraw from the representation of the client. Id.; see also Rules of Professional Conduct, Rule 1.16. That does not mean, however, as the defendants' argument suggests, that the potential for such a conflict must preclude an attorney from representing a borrower and lender simultaneously.

The judgment is reversed and the case is remanded with direction to deny the motion to strike and for further proceedings according to law.

In this opinion the other justices concurred.

