[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
On November 7, 1991, plaintiff Martin A. Goldberg filed this action against defendants: Schatz, Schatz, Ribicoff Kotkin, a law firm (hereinafter "defendant firm"), and the following individual partners of defendant firm, Mark Oland, Michael L. Widland, Robert M. Dombroff, Stanford N. Goldman, Jr., Matthew J. Forstadt, Mark A. Asmar, Andrew Schatz, and Gary D. Jones, (hereinafter "partners"). On February 4, 1992, plaintiff filed a second revised complaint in eight counts. Plaintiff alleges that from January 1, 1989 until April, 20, 1990 he was a partner at the defendant firm and that during this time period defendants committed certain actionable wrongs against plaintiff. In addition to seeking an accounting of the financial affairs of the defendant firm (count one) plaintiff seeks damages for breach of Paragraph eight of the partnership agreement concerning compensation (count two), breach of covenant of good faith and fair dealing (count three), unfair trade practices (count four), conversion (count five), larceny (count six), breach of covenant of good faith and fair dealing (count seven), and wrongful termination (count eight). CT Page 7892
On February 19, 1992, the defendants filed a motion to strike the following counts of the complaint for failure to state a claim upon which relief can be granted: counts four, five, six, eight, all counts as to defendant Jones and Schatz, and all counts as to defendants Oland, Widland, Dombroff, Goldman, Forstadt, and Asmar. Along with the motion, defendants filed a memorandum of law. On April 24, 1992, plaintiff filed an objection to the motion to strike along with a memorandum of law. Both parties filed supplemental memoranda of law.
The motion to strike challenges the legal sufficiency of a pleading. Practice Book 152; Westport Bank Trust Co. v. Corcoran, Mallin 
Aresco, 221 Conn. 490, 495, ___ A.2d ___ (1992). In reviewing a motion to strike, the court must take the facts to be those alleged in the complaint. Id. The court should construe the complaint "in the manner most favorable to sustaining its legal sufficiency." Bouchard v. People's Bank, 219 Conn. 465, 471,574 A.2d 1 (1991).
Count Four — CUTPA
Defendants move to strike count four of the complaint in that alleged breaches of duties owed a partner by his co-partners do not, as a matter of law, amount to "the conduct of trade or commerce" within the meaning of CUTPA, General Statutes 42-110b(a). Defendants argue that the definition of "trade or commerce" does not apply to claims arising from an employment relationship such as the internal business affairs and workings of a partnership.
General Statutes 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "Trade" and commerce is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or any thing of value in this state." General Statutes 42-110a(4). The majority of Superior Court cases hold that "CUTPA does not cover disputes which arise. . .solely between an employee and his or her employer and which concern exclusively the employer/employee relationship. " Krupa v. United Technologies, 2 CSCR 740 (July 1, CT Page 7893 1987, Maloney, J.). See also Kinter v. Nidec-Torin Corp., 662 F. Sup. 112, 113 (D.Conn. 1987); Andersen v. E. J. Gallo Winery, D.N. H85-295 (D.Conn. Nov. 7, 1985); Heller v. North American Rock Co., 3 Conn. L. Rptr. No. 9, 279 (February 25, 1991, Lewis, J.) Apgar v. MBS Business Systems, 3 Conn. L. Rptr. 72, (January 14, 1991, Purtill, J.); Mustaro v. St. Rose of Lime School, 2 Conn. L. Rptr. No. 19, 604 (December 10, 1990, Flanagan, J.); Fitzgerald v. Forelli, 2 Conn. L. Rptr. No. 10, 295 (August 31, 1990, Thim, J.); Wright v. The Bank of Darien, 3 CSCR 253 (1988, Harrigan, J.); Sherman v. Neurological Surgeons, P.C.,3 CSCR 314 (1988, McGrath, J.); Weiner v. Weathermaster Ind., Inc., 3 CSCR, 314 (1988, Hennessey, J.); Mendillo v. The Lee Brook School, D.N. 87 00229205 (J.D. of Ansonia/Milford at Milford, Memorandum of Decision on Motion to Strike, December 7, 1987, Nash, J.); Kriwitsky v. Farmington, D.N. 419752 (J.D. of Hartford/New Britain at Hartford, Memorandum of Decision on Motion to Strike, October 3, 1985, Goldberg, J.). But see Poquonock Mobil, Inc. v. Pinkham, 3 Conn. L. Rptr. No. 19, 629 (May 6, 1991, Spada, J.); Delre v. Adkins, D.N. 228922, (J.D. of Fairfield at Bridgeport, Memorandum of Decision on Motion to Strike, September 28, 1987, Burns, J.); Lanzetta v. Ferraro, 2 CSCR 427 (1987, Gill, J.).
Plaintiff alleges the following facts in count four:
1. Plaintiff, Martin A. Goldberg, is a resident of the County of Hartford, State of Connecticut and is and was at all times mentioned herein a duly qualified and acting Attorney at Law admitted to the Bar of the State of Connecticut.
2. The Defendant, Schatz Schatz, Ribicoff 
Kotkin (hereinafter referred to as "Defendant firm") is and was at all times mentioned herein, a general partnership engaged in the practice of law within the State of Connecticut.
3. For all times referred to herein, the management and management authority of said Defendant firm was held by, as well as coordinated and carried out by, a Board of Governors or by an Executive Committee.
4. For all times referred to herein, said Board of Governors/Executive Committee was comprised of the following individuals, all of whom were Connecticut CT Page 7894 residents as well as attorneys admitted for practice to the Connecticut State Bar:
 Mark Oland; Michael L. Widland; Robert M. Dombroff; Stanford N. Goldman, Jr.; Matthew J. Forstadt; and Mark A. Asmar.
5. For all times referred to herein, there was a written partnership agreement, dated November 12, 1973, with written amendments thereto, identifying the partner members and defining the organization, and governance of the firm (hereinafter referred to as "operative partnership agreement").
6. For all times referred to herein, the proportional ownership of each partner was identified by units.
7. A four unit partner in the Defendant firm, for the year 1989, had an approximate 1.68 percentage ownership interest in the capital of said firm.
8. The Plaintiff was elected to be a four unit partner in the Defendant firm on or about November 17, 1987, which partnership became effective January 1, 1989.
9. The Plaintiff and Defendants were partners in a business, as that term is defined in C.G.S. Section 34-40, from January 1, 1989 until April 20, 1990.
10. December 1, 1988, and continuing thereafter until March 4, 1991, the Defendant firm formally recognized and created a deduction from the profits of the firm called "The Community Service Allocation" which reduced the profits that were to be allocated proportionally to the partners of the Defendant firm.
11. The Community Service Allocation was, by its express terms — as set forth in Paragraph 8(c) of the operative partnership agreement amended by instrument of December 12, 1988 — created to reimburse or compensate members of the Defendant firm who expended significant amounts of voluntary time and money in "community service activities" which were thought to benefit the Defendant firm.
12. On and subsequent to December 1, 1988, and continuing thereafter until on or about March 4, 1991, the amount of community service allocation reimbursement and compensation for each partner, was CT Page 7895 determined by a Community Service Committee (hereinafter referred to as "CSC") appointed by the Defendant firm's Board of Governors.
13. On and subsequent to December 1, 1988 and continuing thereafter until on or about March 4, 1991, the CSC was made up of, in part, the following individuals who were partners within the Defendant firm and who were, also, Connecticut residents and attorneys admitted for practice to the Connecticut State Bar: GARY D. JONES; ANDREW M. SCHATZ.
14. Throughout calendar year 1989, the CSC served to coordinate and enforce an illegal system of raising political contributions from the Defendant firm's partners to further the interests of the Defendant firm.
15. During the summer of 1989, the Defendant Gary D. Jones telephoned Plaintiff to request that he contribute to a New Haven mayoral campaign.
16. Plaintiff refused to make the contribution requested by the Defendant Gary Jones.
17. On or about January 17, 1990, the aforesaid CSC sent, or caused to be sent, a memorandum to the Defendant firm's Board of Governors/Executive Committee recording Plaintiff's aforesaid refusal to contribute.
18. On or about January 22, 1990, the Compensation Committee voted to invoke a penalty against the Plaintiff at 20% of his entitled compensation, reducing it for calendar year 1989, from approximately $114,000.00 to $91,000.00.
19. Said Compensation Committee voted again to penalize Plaintiff for calendar year 1990, in approximate amount of $8,500.00.
20. The imposition of said penalties by the Defendant firm's Compensation Committee as aforesaid was an improper punishment to the Plaintiff for refusing to participate in the aforesaid illegal system of political contributions.
21. Maintenance of the aforesaid illegal system of raising political contributions and the imposition of a penalty upon Plaintiff as aforesaid was an unfair CT Page 7896 or deceptive act or practice in the conduct of a trade or commerce in violation of C.G.S. Sections 42-110 (b) et. seq.
22. Plaintiff has, in consequence of said deceptive act or practice, etc. suffered an ascertainable loss.
Plaintiff has alleged sufficient facts in count four to satisfy the element of "trade or commerce." In addition to alleging facts arising from the employer/employee relationship, plaintiff alleges facts arising outside of the employer/employee relationship, namely, that the defendants violated State election laws in furtherance of their business. Such a violation could cause injury to consumers, competitors or other business persons.
Contrary to defendants' argument the case of Chester v. Schatz Schatz, Ribicoff Kotkin, 6 Conn. L. Rptr. No. 18, 526 (July 6, 1992, O'Neill, J.) is inapposite. In the Chester case plaintiff's CUTPA count was based entirely on the fact that the defendants wrongfully terminated plaintiff's employment which arguably arises solely out of the employer-employee relationship. The present case is factually distinguishable from the Chester case.
The motion to strike count four is denied.
Count Five — Conversion
Defendants move to strike the fifth count of the complaint on the ground that plaintiff has failed to allege a necessary element of conversion, namely, that the defendants exercised ownership over property belonging to plaintiff.
"Conversion occurs when one, without authorization, assumes and exercises the right of ownership over property belonging to another, to the exclusion of the owner's rights." Luciani v. Stop 
Shop Co., 15 Conn. App. 407, 409, 544 A.2d 1238
(1988). "[T]here are two `general classes' of conversion: (1) that in which possession of the allegedly converted goods is wrongful from the onset; and (2) that in which the conversion arises subsequent to an initial rightful possession." Id., citing Coleman v. Francis, 102 Conn. 612, 615, 129 A. 718
(1925). If possession, originally rightful, becomes CT Page 7897 wrongful by reason thereafter of a wrongful detention, there can be no conversion until the possessor refuses to deliver the property on demand. Luciani, supra, 410.
"All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership is partnership property." General Statutes 34-46. "The property rights of a partner are (1) his rights in specific partnership property, (2) his interest in the partnership, and (3) his right to participate in the management." General Statutes 34-62. "A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property." General Statutes 34-64. "[T]he only legal mode of settlement [of partnership accounts] is by sale of all the partnership effects, and until sold each partner has a legal interest in those effects subject to legal process. . . ." Stevens v. Stevens,39 Conn. 477, 481 (1872).
In his fifth count plaintiff alleges that there was a written partnership agreement "identifying the partner members and defining the organization and governance of the firm." Plaintiff further alleges that for calendar year 1989 he was a four unit partner at defendant firm entitled to a 1.68% ownership of the firm's capital. Plaintiff further alleges that on January 22, 1990 the defendant firm's Compensation Committee comprised of defendants Oland, Widland, Dombroff, Goldman, Forstadt, and Asmar voted to reduce plaintiff's entitled compensation for calendar year 1989 by 20% from $114,000.00 to $91,000.00. Plaintiff alleges that the deduction was a penalty for plaintiff's refusing to participate in an illegal activity.
Plaintiff has sufficiently alleged facts that the profits for calendar year 1989, to which plaintiff had an ownership interest, had transferred from partnership property to plaintiff's property which would negate the requirement of settling partnership accounts. Plaintiff has sufficiently alleged that the profits for calendar year 1989 were divided into units for purposes of compensation to plaintiff and then reduced by 20%. Accordingly, the plaintiff has sufficiently alleged facts going to the elements of conversion and therefore the motion to strike count five is denied. CT Page 7898
Count Six — Larceny
Defendants move to strike count six on the ground that partners cannot be liable as a matter of law for the alleged theft or larceny of property of which they are co-owners.
"Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." General Statutes 52-564. "The word `steals' as used in General Statutes 52-564 is synonymous with the definition of larceny under General Statutes53a-119." Lauder v. Peck, 11 Conn. App. 161, 165,526 A.2d 539 (1987). Pursuant to General Statutes53a-119 "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." Clear and convincing proof of the actions alleged is required in order to assess treble damages pursuant to [General Statutes] 52-564." Lauder, supra, 163.
In the sixth count plaintiff alleges the same facts as in the fifth count for conversion as set forth in this memorandum, supra. In addition, plaintiff alleges that the "Defendant firm intended to deprive Plaintiff and/or to appropriate to itself money belonging to the Plaintiff when its Compensation Committee imposed the aforesaid penalty."
For the same reasons set forth in the discussion on conversion, supra, we conclude that plaintiff has sufficiently alleged facts going to the elements of larceny. Accordingly, the court denies that motion to strike count six of the complaint.
Count Eight — Wrongful Termination
Defendants move to strike count eight of the complaint on the ground that plaintiff does not allege an employee/employer relationship with the defendants.
The traditional rule in Connecticut governing employment at will contracts of permanent employment, or employment for an indefinite term, is that such contracts are terminable at the will of either party without regard to cause. Coelho v. Post Seal Int., Inc., 208 Conn. 106, 117-18, 554 A.2d 170 (1988). The CT Page 7899 doctrine of wrongful discharge is a narrow exception to this rule. D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 211 n. 1,520 A.2d 217 (1987). Under this doctrine an employee may not be dismissed for a "demonstrably improper reason. . .a reason whose impropriety is derived from some important violation of public policy." Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474,427 A.2d 385 (1980). An action for wrongful discharge may also be based upon an implied covenant of good faith and fair dealing found in the employment contract. Magnan v. Anaconda Industries, Inc., 193 Conn. 558,562-63, 479 A.2d 781 (1984). A wrongful discharge action may also be based upon an implied contract to terminate only for cause. Coelho, supra, 111.
"An employee in a broad sense is one who receives salary or wages or other compensation from another. . . ." Swiss Cleaners, Inc. v. Danaher,129 Conn. 338, 343, 27 A.2d 806 (1942).
In count eight plaintiff alleges the following facts:
3. For all times referred to herein, the management and management authority of said Defendant firm was held by, as well as coordinated and carried out by, a Board of Governors or by an Executive Committee.
4. For all times referred to herein, said Board of Governors/Executive Committee was comprised of the following individuals, all of whom were Connecticut residents as well as attorneys admitted for practice to the Connecticut State Bar:
 Mark Oland; Michael L. Widland; Robert M. Dombroff; Stanford N. Goldman, Jr.; Matthew J.
12. On and subsequent to December 1, 1988, and continuing thereafter until on or about March 4, 1991, the amount of community service allocation reimbursement and compensation for each partner, was determined by a Community Service Committee (hereinafter referred to as "CGC") appointed by the Defendant firm's Board of Governors.
13. On and subsequent to December 1, 1988 and continuing thereafter until on or about March 4, 1991, the CSC made up of, in part, the following individuals who were partners within the Defendant firm and who CT Page 7900 were, also Connecticut residents and attorneys admitted for practice to the Connecticut State Bar: GARY D. JONES; ANDREW M. SCHATZ.
14. Throughout calendar year 1989, the CSC served to coordinate and enforce an illegal system of raising political contributions from the Defendant firm's partners to further the interests of the Defendant firm.
15. During the summer of 1989, the Defendant Gary D. Jones telephoned Plaintiff to request that he contribute to a New Haven mayoral campaign.
16. Plaintiff refused to make the contribution requested by the Defendant Gary Jones.
17. On or about January 17, 1990, the aforesaid CSC sent, or caused to be sent, a memorandum to the Defendant firm's Board of Governors/Executive Committee recording Plaintiff's aforesaid refusal to contribute.
18. On or about January 22, 1990, the Compensation Committee voted to invoke a penalty against the Plaintiff at 20% of his entitled compensation, reducing it for calendar year 1989, from approximately $114,000.00 to $91,000.00.
20. The Defendant's imposition of penalty for refusal to participate in the aforesaid scheme of illegal campaign financing amounted to a wrongful termination of Plaintiff's employment.
21. Plaintiff, in consequence of said wrongful termination, left the Defendant firm April 20, 1990.
The issue of whether a partner may be an employee of a partnership has not been decided in Connecticut. For purposes of the motion to strike plaintiff alleges sufficient facts going to an employer-employee relationship, namely, that management decisions including the amount of compensation to be paid to partners were made on a continuing basis by a Board of Governors or Executive Committee, a Community Service Committee, and a Compensation Committee. Accordingly, the motion to strike count eight is denied.
All Counts CT Page 7901
Defendants move to strike all counts as to the individually named partners of defendant firm in that none of the counts allege that the acts or omissions of the individual partners caused plaintiff compensable injury.
In all counts of the complaint plaintiff alleges that following facts:
1. Plaintiff, Martin A. Goldberg, is a resident of the County of Hartford, State of Connecticut and is and was at all times mentioned herein a duly qualified and acting Attorney at Law admitted to the Bar of the State of Connecticut.
2. The Defendant, Schatz Schatz, Ribicoff 
Kotkin (hereinafter referred to as "Defendant firm") is and was at all times mentioned herein, a general partnership engaged in the practice of law within the State of Connecticut.
3. For all times referred to herein, the management and management authority of said Defendant firm was held by, as well as coordinated and carried out by, a Board of Governors or by an Executive Committee.
4. For all times referred to herein, said Board of Governors/Executive Committee was comprised of the following individuals, all of whom were Connecticut residents as well as attorneys admitted for practice to the Connecticut State Bar:
 Mark Oland; Michael L. Widland; Robert M. Dombroff; Stanford N. Goldman, Jr.; Matthew J. Forstadt; and Mark A. Asmar.
5. For all times referred to herein, there was a written partnership agreement, dated November 12, 1973, with written amendments thereto, identifying the partner members and defining the organization, and governance of the firm (hereinafter referred to as "operative partnership agreement").
6. For all times referred to herein, the proportional ownership of each partner was identified by units.
7. A four unit partner in the Defendant firm, for the year 1989, had an approximate 1.68 percentage CT Page 7902 ownership interest in the capital of said firm.
8. The Plaintiff was elected to be a four unit partner in the Defendant firm on or about November 17, 1987, which partnership became effective January 1, 1989.
9. The Plaintiff and Defendants were partners in a business, as that term is defined in C.G.S. Section 34-40, from January 1, 1989 until April 20, 1990.
General Statutes 34-53 provides in part: "All partners are liable. . .(b) jointly for all. . .debts and obligations of the partnership [not chargeable to the partnership under sections 34-51 and 34-52]." Both 34-51 and 34-52 expressly concern liability to persons not being a partner. General Statutes 52-112
provides:
 (a) In commencing a civil action by or against a partnership, it shall not be necessary to insert the names of the partners in the process, provided the partnership name is stated. The plaintiff shall have the right, within the first three days of the court after the return day, to amend the process without costs by inserting the names of the partners.
 (b) An attachment, in any civil action against a partnership, of the private property of any of its members shall not be valid unless the name of the member is set forth on the process at the time of attachment.
General Statutes 52-364 provides: "No execution upon a judgment rendered against co-partners shall be levied upon any other than the partnership property or the individual property of such defendants as are particularly named in the complaint." "Section 52-112
allows suit in the partnership name but prohibits the attachment of the private property of a partner not named in the process. General Statutes 52-364
prohibits execution upon the private property of a partner not named in the complaint." Dayco Corp. v. Fred T. Roberts Co., 192 Conn. 497, 504,472 A.2d 780 (1984). The court in Dayco interpreted the above referenced statutes as permitting a plaintiff to institute suit against individual partners to hold them liable for the partnership debt. Dayco, supra, 504. CT Page 7903
Plaintiff may name as defendants the individual partners of the defendant firm in that pursuant to statute the partners are jointly liable for the debts of the defendant firm. In addition, throughout the complaint plaintiff makes factual allegations against the individual named partners that may amount to actionable wrongs against the plaintiff that could be chargeable to the individual partners rather than to the defendant firm. Accordingly, the motion to strike the complaint as to the individual named partners is denied.
Mary R. Hennessey, Judge