[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS MOTION TO STRIKE
On November 2, 1994, the plaintiff, Jeffrey S. Apicelli, filed a three count amended complaint against the defendant, Arrow Paper and Supply Company, Inc. Count one alleges breach of contract. Count two alleges tortious interference with a business expectancy. Count three alleges a violation of the Connecticut Unfair Trade Practices Act (CUTPA). On December 7, 1994, the defendant filed a motion to strike all three counts of the plaintiff's amended complaint, accompanied by a supporting memorandum of law. On December 22, 1994, the plaintiff filed a memorandum of law in objection to the defendant's motion to strike.
The plaintiff's complaint alleges the following facts. On March 23, 1985, the plaintiff and the defendant executed an employment agreement of unlimited duration whereby the plaintiff agreed to provide personal services to the defendant and the defendant agreed to compensate the plaintiff. The plaintiff and the defendant mutually observed the terms of the March 23, 1985 agreement until January 4, 1989. On January 5, 1989, the plaintiff and the defendant modified various terms of the 1985 agreement[1]. The modification at issue was the revision of the plaintiff's compensation scheme from straight commission to salary plus incentives.
The modified employment agreement was observed until approximately February 13, 1991, when the defendant advised the plaintiff that it would no longer abide by the modified compensation agreement. The defendant thereby reduced the plaintiff's compensation from $1,387.78 per week to $1050.00 per week, over the objections of the plaintiff. In October, 1991, the defendant advised the plaintiff that it was dissatisfied with the salary plus incentive compensation scheme and that, commencing CT Page 5205 January, 1992, the plaintiff would return to the original commission compensation scheme in his then existing territory.
The plaintiff estimated that his compensation under the January, 1992 arrangement would approximate $30,000, less than his yearly compensation for the years of 1989, 1990 and 1991. Consequently, the plaintiff alleges that he was compelled to leave the employ of the defendant.
The plaintiff further alleges that in October, 1991, he solicited employment by Monarch Foods (Monarch), a company which operated in the same field as the defendant. Monarch allegedly extended a conditional offer of employment to the plaintiff, conditioned only upon the plaintiff's agreeing to indemnify Monarch for all legal fees which might be incurred in consequence of any dispute between the defendant and Monarch over the applicability of a "covenant not to compete" provision contained in the subject employment agreement. The plaintiff advised the defendant of this situation, asking either to be rehired or, in the alternative, for a statement by the defendant that it would not enforce the "covenant not to compete." The defendant replied that it considered the "covenant not to compete" to be of continuing force and effect, compelling the plaintiff to decline Monarch's employment offer.
"The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint." NovametrixMedical Services v. BOC Group, Inc., 224 Conn. 210, 214-15,618 A.2d 25 (1992). Practice Book § 151 provides that a motion to strike properly challenges "the legal sufficiency of the allegations of a complaint, counterclaim or cross-claim in terms of whether it states a cause of action for which relief may be granted. See Pratt v. Old Saybrook, 225 Conn. 177, 185,621 A.2d 1322 (1993).
"A motion to strike admits all facts well pleaded." Mingachosv. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "In ruling on a motion to strike, the court is "limited to the facts alleged in the complaint" and "must construe those facts most favorably to the plaintiff." Novametrix Medical Services v. BOC Group,Inc., supra, 224 Conn. 215. "This includes the facts necessarily implied and fairly provable under the allegations." Westport Bank Trust Co. v. Corcoran, Malin Aresco, 221 Conn. 490, 495,605 A.2d 862 (1992). The court is further limited to considering only the grounds specified in the motion. Blancato v. FeldsparCT Page 5206Corporation, 203 Conn. 34, 44, 522 A.2d 1235 (1987).
The defendant moves to strike count one of the plaintiff's amended complaint on the ground that the plaintiff does not allege a violation of public policy as required for a successful claim of breach of an at-will employment contract. The defendant moves to strike count two of the plaintiff's amended complaint on the ground that the plaintiff fails to allege any improper motive on the part of the defendant as required in a successful claim of tortious interference with a business expectancy. The defendant moves to strike count three of the plaintiff's amended complaint on the ground that CUTPA does not apply to disputes which arise solely from the employer-employee relationship.
The plaintiff objects to the defendant's motion to strike as to count one of the plaintiff's amended complaint on the ground that he need not allege a violation of public policy to sufficiently plead a breach of an at-will employment contract. The plaintiff objects to the defendant's motion to strike as to count two of the plaintiff's amended complaint on the ground that he sufficiently alleged the requisite improper motive necessary for a sufficient tortious interference of business expectancy claim. The plaintiff objects to the defendant's motion to strike count three of the plaintiff's amended complaint on the ground that the allegations of interference arose out of actions which occurred subsequent to the employer-employee relationship between the plaintiff and the defendant.
Count one of the plaintiff's first amended complaint alleges a breach of contract, claiming that the defendant breached a provision of the January 5, 1989 modification to the employment agreement between the plaintiff and the defendant. The memorandum of January 5, 1989, provides:
 If you leave Arrow paper before you are eligible or are fired for just cause, all payments would stop including the second year payments.
 If for business or economic reasons, Arrow chooses to discontinue this program, Jeff would be allowed to continue building the route he was working on and would pay him at the rate he was presently working for the next 52 weeks of actual employment.
Plaintiff's first amended complaint (amended complaint), Exhibit CT Page 5207 B.
The plaintiff alleges that the modified employment agreement was observed until approximately February 13, 1991, at which time the defendant advised the plaintiff that it would no longer abide by the modified compensation agreement. The defendant then allegedly reduced the plaintiff's compensation from $1,387.78 per week to $1050.00 per week, over the objections of the plaintiff. In October, 1991, the defendant advised the plaintiff that it was dissatisfied with the salary plus incentive compensation scheme and that, commencing January, 1992, the plaintiff would return to the original commission compensation scheme in his then existing territory.
"An employment contract is presumed to be terminable at will." Lockwood v. Professional Wheelchair Transportation,37 Conn. App. 85, 94, ___ A.2d ___ (1995); see Magnan v. AnacondaIndustries, Inc., 193 Conn. 558, 563-69, 479 A.2d 781 (1984). "An exception to the employment-at-will doctrine was recognized, however, in a cause of action for employees who are discharged in violation of the mandates of public policy." Id.; see Sheets v.Teddy's Frosted Foods, Inc., 179 Conn. 471, 480, 427 A.2d 385
(1980). When a person is hired for an indefinite period of time, an employment at will relationship exists, and such employment is legally terminable at the will of either party, with or without cause. See Somers v. Cooley Chevrolet Co., 146 Conn. 627, 629,153 A.2d 426 (1959).
In the instant action, the employment contract was at will and, therefore, the defendant was free to terminate the contract relationship. Nevertheless, such a termination was expressly anticipated in the language of the January 5, 1989 modification to the employment agreement which provided that upon such a termination, the plaintiff was to receive 52 weeks of pay at the rate equal to that immediately prior to the termination. The plaintiff alleges that this was never done, thereby resulting in the breach of an express contract term. Therefore, the plaintiff has alleged sufficient facts to establish a breach of contract cause of action.
Count two of the plaintiff's amended complaint alleges a claim of tortious interference with a business expectancy. The Connecticut courts have "long recognized a cause of action for tortious interference with contract rights or business relations." Kelley Property Development, Inc. v. Lebanon, CT Page 5208226 Conn. 314, 340, n. 30, 627 A.2d 909 (1993). While the cases "have not focused with particularity on what acts of interference are tortious . . . [the courts] have made it clear that not every act that disturbs a contract or business expectancy is actionable."Blake v. Levy, 191 Conn. 257, 260, 464 A.2d 52 (1983). "[F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . [A]n action for intentional interference with business relations requires the plaintiff to plead and prove at least some improper motive or improper means."Kelley Property Development, Inc. v. Lebanon, supra,226 Conn. 340-41, n. 30. "[A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself." Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 536, 546 A.2d 216
(1988).
Paragraph 14 of count two of the plaintiff's amended complaint states:
 The actions of Arrow described in paragraphs 11 and 13 were intended to cause harm and hardship to Apicelli, which they did do, and have done; and those actions constitute a tortious interference with Apicelli's business expectancy with Monarch, and with Apicelli's ability to find employment and earn a living in his lifelong home, Connecticut, and his longtime sales specialty.
The plaintiff sufficiently alleges the requisite intent element for a claim of tortious interference with a business expectancy by stating that "[t]he actions of Arrow . . . were intended to cause harm and hardship." Accordingly, the defendant's motion to strike the plaintiff's amended complaint is denied as to count two.
Count three of the plaintiff's amended complaint alleges a violation of CUTPA. General Statutes § 42-110b(a) provides:
 No person shall engage in unfair methods of competition and unfair or deceptive trade or practices in the conduct of any trade or commerce. CT Page 5209
General Statutes § 42-110a(4) provides:
 "Trade" and "commerce" means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state.
In Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 670,613 A.2d 838 (1992), the appellate court addressed the issue of whether CUTPA applies to the employer-employee relationship. TheQuimby court granted a motion to strike, stating that "[t]he relationship in this case is not between a consumer and a commercial vendor, but rather between an employer and employee. There is no allegation in the complaint that the defendant advertised, sold, leased or distributed any service or property to the plaintiff." Id. The Quimby court, effectively adopting the holding of Banerjee v. Robert, 641 F. Sup. 1093 (D.Conn. 1986), held that "the employer-employee relationship does not fall within the definition of trade or commerce for the purposes of an action under CUTPA." Id.
In count three of the plaintiff's amended complaint, the plaintiff alleges that the defendant's actions "constitute a violation of the Connecticut Unfair Trade Practices Act in that these actions were, viewed in totality, unfair or deceptive acts or practices in the conduct of trade or commerce and unethical, oppressive and/or unscrupulous, in that Apicelli was unfairly deprived of all opportunity to earn a living in his longtime sales specialty." Plaintiff's amended complaint, count three, ¶ 18. The plaintiff does not, in any portion of his complaint, allege that the defendant "advertised, sold, leased or distributed any services or property to the plaintiff." Quimby v.Kimberly Clark Corp., supra, 28 Conn. App. 670. The actions allegedly establishing the CUTPA claim set forth in count three of the plaintiff's amended complaint arise solely out of the employment relationship between the plaintiff and the defendant. The relationship at issue in the instant action "is not between a consumer and a commercial vendor, but rather between an employer and employee." DeLoughery v. Kroopnick, 7 Conn. L. Rptr. 487, 488 (October 21, 1992, Hadden, J.)
Therefore, count three of the plaintiff's amended complaint is legally insufficient in two regards. First, count three fails CT Page 5210 to state a cause of action under CUTPA as the allegations contained therein do not constitute "trade" or "commerce" as defined by General Statutes § 42-110a(4) and as interpreted by the appellate court. Secondly, the allegations in count two which is incorporated in count three arise solely out of the employer-employee relationship and therefore do not come within the purview of CUTPA. Therefore, defendant's motion to strike the plaintiff's amended complaint is granted as to count three.
Austin, J.