[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
 FACTS
By a four count class action complaint filed with the court on December 6, 1993, the plaintiff, Michael T. Pierce (Pierce), brought suit against the defendant, General Electric Credit Auto Lease, Inc. (GECAL). Count one is a claim brought under Connecticut's Unfair Trade Practice Act (CUTPA), and count two is a claim for declaratory relief. At the short calendar held on May 8, 1995, counsel for the plaintiff indicated that counts three and four have been withdrawn, and they are therefore irrelevant to the current motion before the court.
According to the complaint, the facts are as follows. In August of 1992, Pierce leased a 1993 Jeep Cherokee from a local dealer. The financing lease was held by GECAL, and contained a provision which provided for the early termination of the lease and stated the penalties for doing so. The lease was for 60 months and required payments over that period which would amount to $24,757.20.
After entering into the lease, Pierce experienced trouble with the vehicle including leaking windows, misaligned window wipers, a faulty cruise control, and abnormal engine noise. Pierce brought the vehicle back for repairs, but the problems persisted. He then terminated the lease prior to its expiration in April of 1993. As a result of the early termination, GECAL applied the lease's early termination formula to determine the appropriate penalty. The total penalty assessed equaled $8,878.23.
Count one alleges a CUTPA violation based on the said termination formula and claims that GECAL engaged in unfair and deceptive acts and practices by:
 a. Describing substantial pecuniary obligations in terms incomprehensible to the average consumer;
 b. Then attempting to collect the obligation charges from consumers; CT Page 9728
 c. Providing in its lease form that the consumer must make lease payments irrespective of the condition of the leased vehicle.
(Count 1, paragraph 30).
Because the early termination charges are "incomprehensible," count two alleges that "they are not a valid and effective part of the contract between the plaintiff and the class members, on the one hand, and defendants, on the other." (Count two, paragraph 35). Pierce, on behalf of himself, and members of his class, seek to "[enjoin] the collection of default/early termination charge from the class members, and [require] a refund of all such charges that have been collected from the class members." (Count two, paragraph 35a).
On January 31, 1994, GECAL moved to strike counts one and two of the class action complaint. GECAL claims that count one fails to state a cause of action under CUTPA because Pierce has failed to allege any "ascertainable loss of money or property." In addition, GECAL proffers that the lease does not contain a provision requiring payments regardless of the condition of the vehicle, and even if construed as such, said clause is not unconscionable as a matter of law, and therefore can not be a violation of CUTPA. Additionally, GECAL asserts the count one and two are fatally defective because they merely allege that the early termination provision in the lease is "incomprehensible to the average consumer" without specifically alleging that it was incomprehensible to Pierce. GECAL also moves to strike Pierce's prayer for punitive damages on the ground that the complaint fails to allege facts sufficient to support such a claim.
Pierce opposes GECAL's motion to strike stating the count one properly states a cause of action under CUTPA, including an allegation of ascertainable loss. Pierce also asserts that count two merely attempts to declare invalid that portion of the lease concerning early termination charges because it is written in "Sanskrit," and that strong public policy and case law support clear contract language to avoid unconscionable and unclear clauses. Finally, Pierce claims that certain numbered paragraphs of his complaint correctly state the facts necessary to support a claim for punitive damages. Both CT Page 9729 parties have submitted briefs in support of their respective positions.
DISCUSSION
"A motion to strike challenges the legal sufficiency of a pleading." Mingachos v. CBS, 196 Conn. 91, 108,491 A.2d 368 (1985). In pleading a case, it is incumbent "on a plaintiff to allege some recognizable cause of action in his complaint." Weiss v. Wiederlight, 208 Conn. 525, 535 n. 1,546 A.2d 216 (1988) (quoting Stavnezer v. Sage-Allen, 146 Conn. 460,461, 152 A.2d 312 (1959)). If the pleader fails to do so, "a motion to strike is properly granted where a 
complaint alleges legal conclusions unsupported by facts."Mora v. Aetna Life Casualty Ins. Co., 13 Conn. App. 208,211, 535 A.2d 390 (1988).
An additional proper and permissible use of a motion to strike is to contest "the legal sufficiency of any prayer for relief in any such complaint, counterclaim, or cross-complaint." Practice Book § 152(2). "`In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the [pleader]' . . ." (Citations omitted)Novametrix Medical Systems, Inc. v. BOC Group, Inc. 224 Conn, 210,215 (1992). "This includes the facts necessarily implied and fairly provable under the allegations . . ." Westport Bank Trust Co., v. Corcoran, Mallin Aresco, 221 Conn. 490, 495605 A.2d 862 (1992).
General Statutes § 42-110g(a) states in part, "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides . . ." "Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known." Hinchliffe v. AmericanMotors Corp., 184 Conn. 607, 614, 440 A.2d 810 (1981).
A careful review of the plaintiff's complaint reveals that he has sufficiently pled an ascertainable loss. Paragraph 12 alleges that Pierce was "dissatisfied with the CT Page 9730 condition of the leased vehicle . . ." Paragraph 15 further alleges that Pierce and members of the class have been "injured by the collection and/or attempted collection of early termination and default charges, in one or more of the following ways: (a) injury to credit; (b) expenditure of money, time, and effort in resisting attempts by GECAL to collect the charges; (c) creation of unlawful and fictitious indebtedness, for which the consumer is ostensibly liable; (d) payment of the charges." The above allegations, taken as true, sufficiently allege an ascertainable loss under CUTPA.
The defendant also claims that count one should be stricken because the lease does not contain a provision that requires the lessee to pay the lease amount regardless of the condition of the vehicle. Even assuming that the lease language can be construed as such, the defendant asserts that such a clause is not unconscionable as a matter of law, and thus it can not constitute and unfair or deceptive practice under CUTPA.
The plaintiff has attached to his complaint a copy of the lease that is the subject of this action. The lease provided to the court is illegible, and it is impossible to tell whether the lease provides for payment under the lease terms regardless of the condition of the vehicle. For purposes of the motion to strike, however, the court must take the facts as alleged in the complaint as true, and therefor the court must assume that the lease provides for continued payments irrespective of the Jeep's condition.
The defendant relies on the case of Emlee EquipmentLeasing Corp., v. Waterbury Transmission, Inc., 31 Conn. App. 455,626 A.2d 307 (1993) for the proposition that requiring payment on a lease even when the equipment may be defective is a common lease provision that can not be found to be deceptive or unfair as matter of law. In Emlee, the defendant entered into a finance agreement whereby Emlee, the leasing company, would provide the financing available so that the defendant could purchase a pipe bending machine from a manufacturer. The leasing company did not deal in the leased goods at all, but merely provided the money so that the defendant could lease the needed equipment. The defendant, however, defaulted on the lease payments, and the leasing company brought suit. As part of its defense, the defendant claimed that some of the provisions in the leasing agreement were unconscionable CT Page 9731 including the provision that required continued payment under the lease terms in all circumstances. The defendant claimed that the machine that they had leased was defective, and that it would be unconscionable to pay for a machine that did not meet their expectations of performance. In discussing this provision of the lease, the court stated:
 This provision is frequently part of a finance lease because upon delivery and acceptance of the subject equipment, the lessor's promised obligation, which is to purchase the equipment, has been fulfilled. The lessor's money has been spent and it is required to do nothing further. In that respect, the lessor's position is similar to that of a bank holding a note for the price of the equipment. The lessee, however, will not have fulfilled its promised obligations until all rental payments have been made. The purpose of the clause, therefore, is to ensure completion of the lessee's performance. This is not unconscionable in the context of a finance lease where, as here, the facts and circumstance do not indicate any inequality of bargaining power or element of unfair surprise.
(Emphasis added.) Id., pp 472-473.
In Emlee, the court relied heavily on the fact that both parties were commercial parties. The court noted, "[a]lthough such provisions might be unconscionable in an ordinary consumer lease, a different conclusion may follow where, as here the contract is a commercial finance lease executed by two corporate entities." Id. 465. In this case, however, the plaintiff is a non-commercial consumer. Furthermore, the plaintiff has alleged that the lease provision was incomprehensible to the average consumer. Therefore, the court finds that the plaintiff has sufficiently demonstrated that the lease provision may be a unfair and deceptive trade practice, and states a valid claim under CUTPA.
The defendant makes much of the fact the plaintiff has failed to allege that he did not understand the lease provision, but rather only makes an allegation that the clause was "incomprehensible to the average consumer." However, the court notes that this is a class action complaint, and it CT Page 9732 certainly can be reasonably inferred from the facts in the complaint that the plaintiff, as a representative of the class, also did not understand the lease provision.
Based on the above discussion, the court finds that both counts one and two properly state a cause of action for which relief can be granted.
Finally, the defendant moves to strike plaintiff's prayer for relief by asserting that the plaintiff has not alleged facts sufficient enough to support a claim for punitive damages. "Punitive damages are available where the plaintiff alleges reckless indifference to the rights of others, intentional, wanton and malicious injury, evil motive or violence." Union Trust Co. v. Basu, 9 CSCR 403 (March 31, 1994, Leuba, J.). The plaintiff submits that the following numbered paragraphs of her complaint properly allege facts sufficient to support a claim for punitive damages. The complaint alleges that:
 23. GECAL has acted in a uniform manner with respect to the entire class, by imposing substantial pecuniary obligations through incomprehensible language and disclaiming warranty responsibility with respect to all class members.
 26. Many class members are unaware of their rights. Typically, leasing companies institute collection actions and secure default judgments against lessees for the charges in question.
 30. GECAL engaged in unfair and deceptive acts and practices by:
 a. Describing substantial pecuniary obligations in terms incomprehensible to the average consumer.
 b. Then attempting to collect the obligation charges from consumers.
 c. Providing in its lease form that the consumer must make lease payments irrespective of the condition of the leased vehicle.
CT Page 9733
 32. The violations complained of were committed for pecuniary gain, and with the knowledge of probable illegality.
The court finds that the above referenced allegations are sufficient to allege a claim for punitive damages. Therefore, defendant's motion to strike the prayer for relief is denied
CONCLUSION
For the reasons stated above, defendant's motion to strike count one and two of the complaint is denied. Defendant's motion to strike the prayer for relief is also denied.
Hurley, J.