CHRIS K. STURM ET AL. *v.* HARB
DEVELOPMENT, LLC, ET AL.
(SC 18447)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and
McLachlan, Js.*

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued January 6—officially released August 31, 2010

*Taryn D. Martin*, with whom, on the brief, were *Robert A. Ziegler* and *Leslee B. Hill*, for the appellants (plaintiffs).

*Melissa A. Scozzafava*, with whom, on the brief, was *Pasquale M. Salvatore*, for the appellee (defendant John J. Harb).

*Opinion*

VERTEFEUILLE, J. The plaintiffs, Chris K. Sturm and Tammy Sturm, brought this action against the defendants, Harb Development, LLC (Harb Development), and its principal, John J. Harb,[1] alleging that their poor workmanship in the construction of the plaintiffs' new home constituted, inter alia, negligence and fraud, and violated both the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and the New Home Construction Contractors Act (new home act), General Statutes § 20-117a et seq. The trial court granted the defendant's motion to strike all counts of the complaint against him in his individual capacity, concluding that the plaintiffs had failed to plead sufficient facts to warrant piercing the corporate veil pro-

---

[1] It is undisputed that Harb Development is a limited liability company authorized to conduct business in Connecticut and that John J. Harb is a member of that company. We refer herein to John J. Harb as the defendant.

vided by General Statutes § 34-133[2] with regard to all of those counts. The plaintiffs now appeal,[3] claiming that the trial court improperly: (1) required the pleading of facts sufficient to pierce the corporate veil for all counts against the defendant; and (2) determined that they failed to plead sufficient facts to support the causes of action against the defendant in three counts of the complaint. We agree with the plaintiffs that the trial court misconstrued all of the counts of the complaint against the defendant and improperly required the plaintiffs to plead facts sufficient to pierce the corporate veil in order to establish the defendant's personal liability. We conclude, however, that the motion to strike counts three and four of the complaint alleging the CUTPA violation and negligence properly was granted because the plaintiffs failed to adequately state a cause of action for the defendant's individual liability on those counts. We further conclude that the trial court properly found the allegations of counts seven and eight of the

[2] General Statutes § 34-133 (a) provides in relevant part: "[A] person who is a member or manager of a limited liability company is not liable, solely by reason of being a member or manager, under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company, whether arising in contract, tort or otherwise or for the acts or omissions of any other member, manager, agent or employee of the limited liability company."

[3] Although the plaintiffs could have amended their complaint following the trial court's ruling granting the motion to strike, the plaintiffs failed to replead. See Practice Book § 10-44 ("[w]ithin fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading"). Therefore, the defendant moved the trial court to enter judgment in his favor on the stricken counts. The trial court granted the motion for judgment. See Practice Book § 10-44 (if "the party whose pleading or a count thereof has been so stricken fails to file a new pleading within that fifteen day period, the judicial authority may, upon motion, enter judgment against said party on said stricken complaint"). The case remains pending against Harb Development. See Practice Book § 61-3 ("[a] judgment disposing of only a part of a complaint, counterclaim, or cross complaint is a final judgment if that judgment disposes of all causes of action in that complaint, counterclaim, or cross complaint brought by or against a particular party or parties"). For convenience, we refer to this appeal as arising from the granting of the motion to strike.

complaint, fraudulent misrepresentation and negligent misrepresentation, respectively, insufficient to set forth a valid cause of action.

The complaint alleges the following facts. On March 17, 2005, the plaintiffs and Harb Development entered into a contract for the construction of a new home in Bristol. After the house was built, the plaintiffs found that the house had not been built in accordance with the contract and that the workmanship was poor. Specifically, the plaintiffs claimed that: the foundation lacked an adequate concrete slab; the lot was not properly sloped, which resulted in water pooling against the foundation; the dormer was built incorrectly; the first and second floors varied from the construction plans; two adjacent windows were not installed symmetrically; the windows throughout the house were improperly installed, resulting in noticeable drafts; the stairway was installed on an uneven floor and without proper trim; the shutters, beam details and floor adjacent to the fireplace were negligently installed; and the interior painting was deficient.

The plaintiffs alleged several causes of action arising from these defects against both Harb Development and the defendant. Against Harb Development, the plaintiffs alleged: breach of contract in the first count; violation of CUTPA in the second count; and failure to comply with the new home act in the fifth count. Against the defendant in his individual capacity, the plaintiffs alleged: individual liability for Harb Development's violation of CUTPA in the third count;[4] negligence in the fourth count; failure to comply with the new home act in the sixth count; fraudulent misrepresentation in the

[4] We do not read the complaint as alleging that the defendant individually violated CUTPA. All of the violations alleged relate either to the defendant's conduct vis-à-vis Harb Development or a breach of contract to which the plaintiffs alleged that only Harb Development, but not the defendant, was a party. Accordingly, we conclude that the plaintiffs were stating a claim for the defendant's personal liability for the *corporation's* violation of CUTPA.

seventh count; and negligent misrepresentation in the eighth count.

The defendant filed a motion to strike all counts against him in his individual capacity. The defendant claimed that because the plaintiffs had asserted fundamentally similar claims against both Harb Development and himself, the plaintiffs were required to allege facts sufficient to pierce the corporate veil in order to state a valid claim against him in his individual capacity. In the plaintiffs' opposition to the motion to strike, they responded that they were not making a claim to pierce the corporate veil, but instead were bringing an action against the defendant for his own personal liability in tort. The trial court agreed with the defendant and granted the motion to strike, ruling, first, that, because the counts against the defendant in his individual capacity arose out of his management of Harb Development, the plaintiffs were required, but failed, to allege facts sufficient to warrant piercing the corporate veil. In addition, the trial court further concluded that there were additional reasons for striking the sixth,[5] seventh and eighth counts of the complaint, namely, the plaintiffs' failure to plead properly the required elements for each cause of action. This appeal followed.[6]

We begin with the appropriate standard of review. "In an appeal from a judgment granting a motion to strike, we operate in accordance with well established

[5] The sixth count of the complaint alleged that the defendant individually violated the new home act. In addition to striking the sixth count for the plaintiffs' failure to allege facts sufficient to pierce the corporate veil, the trial court also concluded that the new home act does not create a private right of action for consumers like the plaintiffs. The plaintiffs did not specifically address the sixth count in their brief filed in this court and plaintiff's counsel, during oral argument in this court, explicitly withdrew any claim with regard to the sixth count. We therefore deem any claim regarding the sixth count abandoned.

[6] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

rules." *Lombard* v. *Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 626, 749 A.2d 630 (2000). "A motion to strike challenges the legal sufficiency of a pleading . . . and, consequently, requires no factual findings by the trial court. As a result, our review of the [trial] court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . [I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Thus, we assume the truth of both the specific factual allegations and any facts fairly provable thereunder. In doing so, moreover, we read the allegations broadly . . . rather than narrowly." (Internal quotation marks omitted.) *Sylvan R. Shemitz Designs, Inc.* v. *Newark Corp.*, 291 Conn. 224, 231, 967 A.2d 1188 (2009); see also Practice Book § 10-39 (addressing motion to strike). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." *Westport Bank & Trust Co.* v. *Corcoran, Mallin & Aresco*, 221 Conn. 490, 496, 605 A.2d 862 (1992).

In addition, it is well settled that "[t]he failure to include a necessary allegation in a complaint precludes a recovery by the plaintiff under that complaint . . . ." (Internal quotation marks omitted.) *Madsen* v. *Gates*, 85 Conn. App. 383, 398, 857 A.2d 412, cert. denied, 272 Conn. 902, 863 A.2d 695 (2004). As a result, "[i]t is incumbent on a plaintiff to allege some recognizable cause of action in his complaint." (Internal quotation marks omitted.) *American Progressive Life & Health Ins. Co. of New York* v. *Better Benefits, LLC*, 292 Conn. 111, 121, 971 A.2d 17 (2009); Practice Book § 10-20 (complaint "shall contain a concise statement of the facts constituting the cause of action"). Yet "[w]e previously have recognized [that] . . . if the complaint puts the defendant on notice of the relevant claims,

then a plaintiff's failure specifically to allege a particular fact or issue is not fatal to his claim unless it results in prejudice to the defendant." *Machado* v. *Hartford*, 292 Conn. 364, 370 n.7, 972 A.2d 724 (2009).

## I

## TORT LIABILITY OF A MEMBER OF A LIMITED LIABILITY COMPANY

We first address whether the trial court properly struck all counts of the complaint against the defendant on the basis that, in order to establish the defendant's personal liability, the plaintiffs were required to plead facts sufficient to pierce the corporate veil.[7] The plain-

---

[7] In order to pierce the corporate veil, a plaintiff must plead and prove that the corporate shield can be pierced under either the instrumentality rule or the identity rule. *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.*, 187 Conn. 544, 552–54, 447 A.2d 406 (1982). "The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of [the] plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. . . . The identity rule has been stated as follows: If [the] plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." (Citations omitted; internal quotation marks omitted.) Id., 553–54.

A limited liability company is analogous to a corporation for purposes of piercing the corporate veil; the identity and instrumentality rules for piercing the corporate veil apply equally to limited liability companies and corporations. See, e.g., *Litchfield Asset Management Corp.* v. *Howell*, 70 Conn. App. 133, 147–48, 799 A.2d 298, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002). Compare General Statutes § 34-133 (a) (corporate veil for members of limited liability companies) with General Statutes § 33-673 (b) (corporate veil for shareholders) and General Statutes § 33-1111 (d) (corporate veil for corporate officers).

tiffs contend that the trial court improperly required them to plead facts sufficient to warrant piercing the corporate veil in order to hold the defendant personally liable. Put another way, the plaintiffs claim that the trial court misconstrued the complaint, failing to understand that their claim is that the defendant is personally and individually liable in tort despite being a member or manager of Harb Development, and it therefore is not necessary to pierce the corporate veil in order to establish his personal liability.[8] The defendant responds that he is immune from liability on these grounds because of the protection against personal liability found in § 34-133 (a).[9] More specifically, because the allegations against him not only arise from his membership in or management of Harb Development but also appear to be substantially similar to the allegations against Harb Development, the defendant contends that the plaintiffs must allege facts sufficient to warrant piercing the corporate veil. We agree with the plaintiffs.

We begin our analysis with a brief review of Connecticut law concerning the individual liability in tort of a corporate agent or officer. "It is well established that an officer of a corporation does not incur personal liability for its torts merely because of his official position. Where, however, an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby. . . . Thus, a director or officer who commits the tort or who directs the tortious act done, or participates or operates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort." (Citations omitted; internal quotation marks

---

[8] The plaintiffs impliedly admit that they did not plead facts that pierce the corporate veil, instead choosing to rely on the tort common-law liability theory.

[9] See footnote 2 of this opinion.

omitted.) *Ventres* v. *Goodspeed Airport, LLC*, 275 Conn. 105, 141–42, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006); see also *Kilduff* v. *Adams, Inc.*, 219 Conn. 314, 331–32, 593 A.2d 478 (1991) ("[i]t is black letter law that an officer of a corporation who commits a tort is personally liable to the victim regardless of whether the corporation itself is liable"); *Scribner* v. *O'Brien, Inc.*, 169 Conn. 389, 404, 363 A.2d 160 (1975) ("It is also true that an officer of a corporation does not incur personal liability for its torts merely because of his official position. Where, however, an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby.").

This court recently affirmed the imposition of individual tort liability, without requiring the piercing of the corporate veil, in *Ventres* v. *Goodspeed Airport, LLC*, supra, 275 Conn. 105. In that case, Timothy Mellon, who was the sole member of the defendant airport company, ordered that the trees and shrubbery interfering with the airport's flight paths be cleared from a slope belonging to a neighboring land trust, an action that constituted a trespass on the land trust's property and caused the trust to lose the value of the trees. Id., 110–13. This court affirmed the judgment of the trial court holding Mellon personally liable for ordering the clearing of the land, despite his claim that he acted solely as a corporate official when he issued the order. Id., 142. Because there was ample evidence in the record that Mellon had ordered the clearing, this court determined that he personally had committed a tort. Id. As a result, "[i]t [was] immaterial whether Mellon was acting in his individual capacity or on behalf of the corporation." Id., 142–43.

Additionally, this court previously upheld the imposition of individual tort liability on a corporate officer in

a construction context in *Scribner* v. *O'Brien, Inc.*, supra, 169 Conn. 389. In that case, the plaintiffs contracted with both Harry O'Brien, the president of the defendant corporation, and the corporation, for the construction and purchase of a new house. Id., 392–93. O'Brien personally owned the lot on which the house was built and the corporation was to build the new home. Id. Soon after the plaintiffs moved into the house, the gravel driveway began retaining water, which caused the driveway to sink substantially and the garage to flood. Id., 394. O'Brien failed to remedy the problem, and the plaintiffs filed suit against both O'Brien individually and the corporation. This court affirmed the judgment of the trial court holding O'Brien individually liable in negligence for the damage incurred by the plaintiffs, reasoning that "O'Brien was present at the property [during construction] on a daily basis, that he undertook to supervise the construction, and that he failed to act with reasonable care in that undertaking. Whether O'Brien was acting in his individual capacity or as an officer and agent of the [corporation], he is still liable to the plaintiffs for his participation in the negligence complained of. . . . [A]n officer of a corporation does not incur personal liability for its torts merely because of his official position. Where, however, an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby." (Citations omitted.) Id., 403–404.

Despite this well established common-law tort exception, the defendant contends that we should follow the trial court's reasoning and construe § 34-133 (a)[10] as

[10] General Statutes § 34-133 (a) provides in relevant part: "Except as provided in subsection (b) of this section, a person who is a member or manager of a limited liability company is not liable, solely by reason of being a member or manager . . . for a debt, obligation or liability of the limited liability company . . . ." See footnote 2 of this opinion.

requiring the plaintiffs to allege facts sufficient to pierce the corporate veil. We disagree because the defendant misconstrues the statute when he claims that § 34-133 (a), which establishes the corporate shield for a limited liability company, is limited only by § 34-133 (b).[11] As a result, the defendant asserts that fulfilling the mandate of § 34-133 (b) is the only means of establishing personal liability in the context of a limited liability company. Section 34-133 (b) provides in part that "any member, manager, agent or employee of a limited liability company rendering professional services . . . shall be personally liable and accountable only for negligent or wrongful acts or misconduct committed by him, or by any person under his direct supervision and control, while rendering professional services on behalf of the limited liability company to the person for whom such professional services were being rendered . . . ." Because contractors do not provide " '[p]rofessional service[s]'," as defined in General Statutes § 34-101 (23),[12] the defendant contends that contractors there-

---

[11] General Statutes § 34-133 (b) provides in relevant part: "[A]ny member, manager, agent or employee of a limited liability company rendering professional services formed under sections 34-100 to 34-242, inclusive, shall be personally liable and accountable only for negligent or wrongful acts or misconduct committed by him, or by any person under his direct supervision and control, while rendering professional services on behalf of the limited liability company to the person for whom such professional services were being rendered . . . . A limited liability company rendering professional services shall be liable up to the full value of its property for any negligent or wrongful acts or misconduct committed by any of its members, managers, agents or employees while they are engaged on behalf of the limited liability company in the rendering of professional services."

Although a minor technical change was made to § 34-133 (b) in 1996; see Public Acts 1996, No. 96-271, § 186; that change is not relevant to this appeal. For purposes of convenience, we refer herein to the current revision of the statute.

[12] General Statutes § 34-101 (23) provides: " 'Professional service' means any type of service to the public that requires that members of a profession rendering such service obtain a license or other legal authorization as a condition precedent to the rendition thereof, limited to the professional services rendered by dentists, natureopaths, chiropractors, physicians and surgeons, doctors of dentistry, physical therapists, occupational therapists,

fore do not fall within the statutory exception to the corporate veil.

The defendant's analysis fails, however, to acknowledge our well established common-law exception to individual liability in a corporate context for an individual's tort liability. First, the language of § 34-133 (a) itself is favorable to common-law exceptions. According to that statute, "a member or manager of a limited liability company is not liable, *solely* by reason of being a member or manager . . . ." (Emphasis added.) General Statutes § 34-133 (a). Thus, although being a member or manager does not impose liability, the statute's use of the term "solely" opens the door to other types of liability, such as common-law liability. Indeed, we recently have noted, in construing Delaware's similarly worded corporate veil statute,[13] that " '[s]olely' is defined to mean 'to the exclusion of alternate or competing things . . . .' Webster's Third New International Dictionary. Thus, the statute plainly provides that a limited liability company member cannot be held liable for the malfeasance of a limited liability company by virtue of his membership in the limited liability company alone; in other words, he must do

podiatrists, optometrists, nurses, nurse-midwives, veterinarians, pharmacists, architects, professional engineers, or jointly by architects and professional engineers, landscape architects, real estate brokers, insurance producers, certified public accountants and public accountants, land surveyors, psychologists, attorneys-at-law, licensed marital and family therapists, licensed professional counselors, licensed or certified alcohol and drug counselors and licensed clinical social workers."

[13] Title 6, § 18-303 (a) of the Delaware Code Annotated (2005) provides in relevant part: "Except as otherwise provided by this chapter, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and *no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company."* (Emphasis added.)

more than merely be a member in order to be liable personally for an obligation of the limited liability company. The statute thus does not preclude individual liability for members of a limited liability company if that liability is not based simply on the member's affiliation with the company." *Weber* v. *U.S. Sterling Securities, Inc.*, 282 Conn. 722, 732, 924 A.2d 816 (2007).

Second, our conclusion that tort liability remains a viable exception despite the enactment of §§ 34-133 and 34-134 is supported by *Ventres* v. *Goodspeed Airport, LLC*, supra, 275 Conn. 145, in which this court determined that § 34-134[14] "evinces no legislative intent to eliminate the right to impose liability on a member or manager of a limited liability company who has engaged in or participated in the commission of tortious conduct. Rather, the statute merely codifies the well established principle that an officer of a corporation does not incur personal liability for its torts merely because of his official position." (Internal quotation marks omitted.) We explained that the right to hold corporate actors liable for personal torts, regardless of their corporate position, is a common-law right. Id. "Although the legislature may eliminate a common law right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed." (Internal quotation marks omitted.) Id. This analysis is equally applicable to § 34-133, which was adopted in the same Public Act as § 34-134, and thus shares that same legislative history.[15] See Public Acts 1993, No. 93-267, §§ 19

---

[14] General Statutes § 34-134 provides in relevant part: "A member or manager of a limited liability company is not a proper party to a proceeding by or against a limited liability company solely by reason of being a member or manager of the limited liability company . . . ."

[15] Section 34-133 (b) also was amended by Public Acts 1996, No. 96-271, § 186; see footnote 11 of this opinion; however, those technical amendments do not affect this analysis.

and 20.[16] Accordingly, we similarly conclude that the legislature did not limit common-law tort liability for corporate actors through the adoption of § 34-133 (b).

The trial court thus improperly concluded that the plaintiffs were required to allege facts sufficient to pierce the corporate veil with regard to all of the counts of the complaint alleged against the defendant in his individual capacity. The trial court improperly failed to consider the common-law tort exception that the plaintiffs chose to invoke as the basis for their individual claims against the defendant. The trial court therefore improperly struck all of the counts against the defendant in his individual capacity for the plaintiffs' failure to make allegations sufficient to pierce the corporate veil.

In his motion to strike in the trial court, the defendant also claimed that the plaintiffs had failed to allege sufficiently a cause of action for negligence in the fourth count of the complaint. Although the trial court did not reach this issue, the defendant again raises this claim in his brief to this court, and the plaintiffs generally respond in their reply brief. Because both parties have briefed the issue, which presents only a question of law, we will address it in the interest of judicial economy. See, e.g. State v. James, 261 Conn. 395, 410–12, 802 A.2d 820 (2002) (exercising supervisory powers under Practice Book § 60-2, in interest of judicial economy, to decide noncertified issue). We note that our resolution of this issue will apply as well to the third count of the complaint, which alleges that the defendant is personally liable for Harb Development's violation of

---

[16] We further note that the defendant's counsel conceded at oral argument that § 34-133 did not supersede the applicability of individual tort liability under the common law.

CUTPA.[17] Although CUTPA is primarily a statutory cause of action; see General Statutes § 42-110b; it equally is recognized that CUTPA claims may arise from underlying causes of action, such as contract violations or torts, provided the additional CUTPA elements are pleaded. See *Stearns & Wheeler, LLC* v. *Kowalsky Bros., Inc.*, 289 Conn. 1, 9–10 n.12, 955 A.2d 538 (2008); *Kilduff* v. *Adams*, supra, 219 Conn. 331–32; see also *United States* v. *Meldish*, 722 F.2d 26, 28 (2d Cir. 1983) ("[u]nfair trade practices found their origin in the common law of torts, and, even today, they usually are treated as civil offenses, see, e.g., 15 U.S.C § 45 [the federal equivalent of CUTPA]"), cert. denied, 465 U.S. 1101, 104 S. Ct. 1597, 80 L. Ed. 2d 128 (1984). The CUTPA count in the present case rests largely on allegations of negligence.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *Jagger* v. *Mohawk Mountain Ski Area, Inc.*, 269 Conn. 672, 687 n.13, 849 A.2d 813 (2004). It is well established within the construction context that a builder must exercise "that degree of care which a skilled builder of ordinary prudence would have exercised under the same or similar conditions." *Scribner* v. *O'Brien, Inc.*, supra, 169 Conn. 400. "[T]he existence of a duty of care is an essential element of negligence. . . . A duty to use care may arise from a contract, from a statute, or from circumstances under which a

---

[17] We express no opinion regarding what our law is or should be with regard to an individual's liability for a corporation's violation of CUTPA. This issue was neither raised nor briefed by the parties, who seem to assume that such liability does exist. Although there appears to be some disagreement among our trial courts regarding the proper standard; compare *Meneo* v. *Patrick*, Superior Court, judicial district of Hartford, Docket No. CV-06-5004523 (March 23, 2007) with *Pfeifer* v. *Legault & Son Construction*, Superior Court, judicial district of Tolland at Rockville, Docket No. CV-05-4002595 (October 26, 2006); we leave the resolution of this issue for another day.

reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." (Internal quotation marks omitted.) *Pelletier* v. *Sordoni/Skanska Construction Co.*, 286 Conn. 563, 578, 945 A.2d 388 (2008). "There is no question that a duty of care may arise out of a contract, but when the claim is brought against a defendant who is not a party to the contract, the duty must arise from something other than mere failure to perform properly under the contract." *D'Angelo Development & Construction Corp.* v. *Cordovano*, 121 Conn. App. 165, 186, 995 A.2d 79 (2010).

Mindful of our obligation to construe pleadings in favor of the plaintiff, we turn to the plaintiffs' allegations of the defendant's negligence in the fourth count of the complaint. Out of the five specifications of negligence in the fourth count, three concern a violation of a contract, namely, a failure of the defendant individually to construct the house according to the terms of the contract, failure to deliver the property in accordance with the contract, and failure to construct the house's dormer according to the contract. The plaintiffs, however, failed to plead anywhere in this negligence count that the defendant personally was a party to the contract, instead pleading only that Harb Development was a party to the contract. These allegations therefore are insufficient to establish that the defendant individually owed a contractual duty to the plaintiffs.

The two remaining allegations claim that the defendant failed to install correctly the concrete slab foundation and improperly instructed Harb Development to deviate from the contractual plans. These two allegations similarly fall short in establishing any duty on the part of the defendant. The plaintiffs failed to allege the source of the defendant's duty to install the slab, such as a contract or an established building code. The plaintiffs

further neglected to plead the manner in which the defendant instructed and caused Harb Development to deviate from the plans and specifications of the contract. Such an allegation is too general and unspecific to either support the conclusion that the defendant had a duty to avoid such instruction or allow the defendant to anticipate the harm claimed.

We therefore conclude that the plaintiffs failed to adequately state a cause of action in the third and fourth counts of the complaint. On remand to the trial court, the defendant's motion to strike should be granted as to these counts for the reasons previously set forth herein.[18]

## II

### SEVENTH COUNT: FRAUDULENT MISREPRESENTATION

The trial court struck the seventh count of the complaint, which alleged fraudulent misrepresentation by the defendant, because the plaintiffs failed to allege facts sufficient to pierce the corporate veil. The trial court additionally determined, however, that the plaintiffs had failed to plead a required element for a claim of fraudulent misrepresentation, namely, that the defendant knew that his representation was false at the time that he made it. The plaintiffs contend that the trial court improperly struck this count because they explicitly had stated or implicitly alleged the required elements. The defendant responds that the trial court properly determined that the plaintiffs had failed to allege each required element of fraudulent misrepresentation. We agree with the defendant.

---

[18] We note that after the trial court grants the motion to strike counts three and four, the plaintiffs will have fifteen days to replead. See Practice Book § 10-44 ("[w]ithin fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading").

"The essential elements of an action in common law fraud, as we have repeatedly held, are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. . . . Under a fraud claim of this type, the party to whom the false representation was made claims to have relied on that representation and to have suffered harm as a result of the reliance." (Citation omitted; internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 777–78, 802 A.2d 44 (2002). "In contrast to a negligent representation, [a] fraudulent representation . . . is one that is knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it." (Internal quotation marks omitted.) *Kramer* v. *Petisi*, 285 Conn. 674, 684 n.9, 940 A.2d 800 (2008). "This is so because fraudulent misrepresentation is an intentional tort." Id., 684.

The plaintiffs allege in the seventh count that the defendant made false statements to them and that they relied upon these statements to their detriment. More specifically, the plaintiffs allege that the defendant fraudulently represented that the house could be built according to the plans and that the defendant had caused Harb Development to build the house according to those plans. It can be inferred that these statements were made to ensure that the plaintiffs would believe that the construction contract had been fulfilled, causing the plaintiffs to accept possession of the house. As a result of these statements, the plaintiffs allege that they incurred damages. The plaintiffs therefore pleaded the first, third and fourth elements of a fraudulent misrepresentation cause of action. The plaintiffs failed to allege, however, that the defendant knew that his repre-

sentations were untrue when he made them. Nowhere in the seventh count do the plaintiffs allege that the defendant made statements that were knowingly untrue. Because knowledge of falsity is an essential element of a cause of action for fraudulent misrepresentation, and the plaintiffs failed to allege this required element, we conclude that the trial court properly struck the seventh count of the complaint.

## III

### EIGHTH COUNT: NEGLIGENT MISREPRESENTATION

The trial court struck the eighth count of the complaint, which alleged that the defendant engaged in negligent misrepresentation, because the plaintiffs failed to allege facts sufficient to pierce the corporate veil. The trial court further determined, however, that the plaintiffs failed to allege a required element for a negligent misrepresentation claim, namely, that the defendant had the means to know, should have known or had a duty to know the truth of his statements. The plaintiffs contend that the trial court improperly struck the eighth count of their complaint because they properly pleaded all the required elements of a claim for negligent misrepresentation. The defendant responds that the trial court properly struck this count because the plaintiffs failed to allege the required elements. We agree with the defendant.

"This court has long recognized liability for negligent misrepresentation. . . . The governing principles [of negligent misrepresentation] are set forth in similar terms in § 552 of the Restatement (Second) of Torts (1977): One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if

he fails to exercise reasonable care or competence in obtaining or communicating the information." (Internal quotation marks omitted.) *Kramer* v. *Petisi*, supra, 285 Conn. 681. As a result, "[w]e have held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." (Internal quotation marks omitted.) Id.

The plaintiffs in the present case failed to plead that the defendant had the means or duty to know the falsity of the statements that he made. In the eighth count, the plaintiffs incorporated paragraphs one through six of the fifth count,[19] and then alleged that "[t]he representations set forth herein were careless and negligent." The fifth count, however, alleges that Harb Development violated the new home act. As a result, the eighth count lacks any allegation of a cause of action against the defendant in his individual capacity. Moreover, the careless and negligent "representations" alleged by the plaintiffs are violations of the new home act committed by Harb Development. As the trial court correctly noted, this allegation "makes no sense as pleaded" because it neither alleges false statements made by the defendant nor the defendant's knowledge or duty to know the falsity of those statements. We conclude that the trial court therefore properly struck the eighth count of the complaint.

The judgment is affirmed as to the seventh and eighth counts of the complaint; the judgment is set aside as

---

[19] In their brief, the plaintiffs explain that they intended to incorporate paragraphs one through six of the *seventh* count into the eighth count, not those same paragraphs from the *fifth* count, as set forth in the complaint. While we may construe a complaint broadly and in the pleader's favor, we have no authority that permits us to rewrite a complaint. Moreover, after the trial court granted the defendant's motion to strike, the plaintiffs had the opportunity to plead over. See Practice Book § 10-44. They could have corrected this error at that time, but inexplicably failed to do so.

to the third and fourth counts, and the case is remanded to the trial court with direction to grant the motion to strike those counts for the reasons set forth in part I of this opinion and for further proceedings according to law.

In this opinion the other justices concurred.

