******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SHARP ELECTRONICS CORPORATION *v.* SOLAIRE
DEVELOPMENT, LLC, ET AL.
(AC 36356)

DiPentima, C. J., and Prescott and Dupont, Js.

Argued November 17, 2014—officially released March 17, 2015

(Appeal from Superior Court, judicial district of Danbury, Pavia, J. [motion to dismiss]; Ozalis, J. [judgment; motion to dismiss].)

*Marc T. Miller*, for the appellants (defendants).

*Michelle Arbitrio*, with whom, on the brief, was *Abigail Elrod*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. In this action seeking damages for breach of contract, the defendants, Solaire Development, LLC (Solaire), and its principal, Stuart Longman, appeal, following a bench trial, from the judgment of the trial court rendered in favor of the plaintiff, Sharp Electronics Coproration, in the amount of $1,334,377.60. The defendants claim that the court improperly (1) denied their pretrial and posttrial motions to dismiss a prejudgment remedy of attachment based on the plaintiff's alleged failure to serve and return to court its summons and complaint within thirty days of the court's order granting the prejudgment remedy as mandated by General Statutes § 52-278j (a)[1]; (2) admitted Longman's pretrial deposition into evidence despite the plaintiff's failure to file a sealed deposition with the court pursuant to Practice Book § 13-30 (e); and (3) denied the defendants' third special defense, which alleged that the complaint and all causes of actions failed to state a claim on which relief may be granted. We disagree with the defendants' claims and, accordingly, affirm the judgment of the trial court.

The following facts, as found by the court, and procedural history are relevant to our resolution of the defendants' claims. In March and April, 2009, Solaire ordered a total of 2537 solar panels from the plaintiff. The total price for the panels was $1,534,377.60. Longman signed the purchase orders for the panels. Before the plaintiff accepted the orders, it required Longman to submit a credit application and an unconditional personal guaranty of "all indebtedness and liabilities of any kind (including all principal, interest, attorney's fees, late charges, and other charges becoming due with respect to such indebtedness) for which [Solaire] is now or may hereafter become liable to [the plaintiff] . . . ." After receiving the credit application and guaranty, the plaintiff delivered the panels to Solaire.

An authorized representative of Solaire received and accepted the delivery at 60 Shelter Rock Road in Danbury. Following delivery, the plaintiff sent invoices totaling $1,534,377.60 to Solaire at its business address of 424 West Mountain Road in Ridgefield. In September, 2009, Solaire paid the plaintiff $200,000, but the plaintiff never received the balance due of $1,334,377.60.

In December, 2009, the plaintiff filed and served an application for a prejudgment remedy of attachment accompanied by a proposed writ, summons, and complaint and other required documents. See General Statutes § 52-278c. According to the proposed order attached to the application, the plaintiff sought to attach certain unspecified bank accounts, real property and other assets of the defendants. After granting a number of requests for continuances, the court scheduled an evidentiary hearing on the application for May 9, 2011.

In the interim, the parties reached a stipulated agreement that the application should be granted in the amount of $1,259,377.60. At the May 9, 2011 hearing, the court, *Maronich, J.*, indicated that it would grant the application for a prejudgment remedy in accordance with the parties' stipulated agreement. The court informed the parties that the body of the attachment order needed to include a detailed description of any real property subject to the order. Both parties agreed that an amended proposed order could be submitted at a later date.[2]

Following the hearing, the court issued the following order regarding the application for prejudgment remedy: "The application having been heard by the court in the presence of counsel for both parties, the court hereby orders prejudgment remedy [sic] according to the stipulation of the parties in the amount of [$1,259,377.60]. This order is stayed until May 31, 2011."[3] This order did not contain any language indicating that it authorized any of the specific prejudgment remedies set forth by General Statutes § 52-278a (d), or describe any real property, bank accounts or any other type of property that the court was authorizing to be attached. The court also did not sign the proposed order of attachment included with the application.

On August 5, 2011, the plaintiff submitted a proposed amended order. The proposed amended order provided that, in addition to bank accounts, equipment, and personal property, the plaintiff sought to attach two parcels of real property, which were identified only by their street addresses. Judge Maronich reviewed the proposed amended order, rejected it because it did not describe sufficiently the real property, and directed the plaintiff to submit a revised proposed order.[4]

On that same day, the defendants filed a motion to dismiss the May 9, 2011 prejudgment remedy on the ground that the plaintiff had failed to serve and return to court a valid summons and complaint within the thirty day period mandated by § 52-278j (a). The plaintiff opposed the motion to dismiss.

On August 24, 2011, the plaintiff submitted a third proposed order, which this time included a detailed legal description of the real property that would be subject to the attachment order. The defendants opposed the amendment on the ground that their motion to dismiss was pending and should be adjudicated first.

The court, *Pavia, J.*, held a hearing on the motion to dismiss on September 6, 2011. Following the hearing, the court issued the following brief order denying the motion to dismiss. "Neither party disputes that an agreement was reached before Judge Maronich whereby the motion for prejudgment remedy was granted subject to revision of the property description.

Following review by Judge Maronich the original amendment was denied as insufficient with a directive to revise. As such, the motion to dismiss is denied."

Judge Maronich, on November 16, 2011, granted and signed a copy of the third proposed order. The plaintiff then served the summons and complaint and returned it to the court on December 16, 2011.[5]

The operative complaint, filed on December 13, 2012, consists of four counts. Counts one and three are against Solaire and allege causes of actions sounding in breach of contract and, alternatively, unjust enrichment. Counts two and four are directed against Longman and allege breach of contract based on Longman's personal guaranty and, alternatively, unjust enrichment. The defendants filed an answer containing eleven special defenses and six counterclaims. The court, *Ozalis*, *J.*, conducted a two day trial. At the conclusion of the trial, the defendants withdrew a number of their special defenses and all but two of their counterclaims.

The court issued a memorandum of decision on November 22, 2013, in which it rejected all of the defendants' remaining special defenses and found in favor of the plaintiff on its counts for breach of contract, rendering judgment against the defendants in the amount of $1,334,377.60 plus postjudgment interest of five percent. The court found that it was unnecessary to address the plaintiff's remaining unjust enrichment counts because they were pleaded in the alternative. Finally, the court ruled in favor of the plaintiff on both of the defendants' counterclaims. This appeal followed. Additional facts will be set forth as necessary.

I

The defendants first claim that the court improperly denied their pretrial and posttrial motions to dismiss the prejudgment remedy of attachment. The defendants argue that a dismissal of the prejudgment remedy was required because the plaintiff failed to serve and return the summons and complaint for which the prejudgment remedy was allowed within thirty days of the court's order granting the application for prejudgment remedy as mandated by § 52-278j (a). The plaintiff argues that the initial order granting the prejudgment remedy was conditioned on the filing of an amended proposed order describing the real property subject to attachment and that Judge Maronich did not grant that order until November 16, 2011. The plaintiff further argues that it timely served and returned the summons and complaint within thirty days of that date, and, therefore, the court properly denied the motions to dismiss. We agree with the plaintiff.

At the outset, we are mindful of the principle "that prejudgment remedies are in derogation of the common law and, therefore, that prejudgment remedy statutes must be strictly construed . . . ." *Feldmann* v. *Sebas-*

*tian*, 261 Conn. 721, 726, 805 A.2d 713 (2002). General Statutes § 52-278a (d) defines a prejudgment remedy as "any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment but shall not include a temporary restraining order." General Statutes § 52-278j (a) provides: "If an application for a prejudgment remedy is granted but the plaintiff, within thirty days thereof, does not serve and return to court the writ, summons and complaint for which the prejudgment remedy was allowed, *the court shall dismiss the prejudgment remedy*." (Emphasis added.)

Nothing in the language of § 52-278j implicates the jurisdiction of the court to continue to hear a civil matter in which a plaintiff has been granted a prejudgment remedy but has failed to comply with § 52-278j (a). Rather, the statutory mandate in § 52-278j (a) is best viewed as a sanction intended to prevent a plaintiff from unduly encumbering assets of a defendant by delaying initiation of the civil action in which the parties' dispute can be fully and fairly litigated. Although failure to comply with § 52-278j (a) does not implicate the court's jurisdiction, and therefore falls outside the scope of Practice Book § 10-30 and other rules governing motions to dismiss civil actions, a motion seeking to dismiss a prejudgment remedy is nevertheless an appropriate vehicle with which to alert the court of a plaintiff's failure to comply with § 52-278j (a). If a court determines that the plaintiff has failed to serve its summons and complaint within thirty days of the court's order granting an application for prejudgment remedy, the court lacks authority to do anything but to "dismiss" (in the parlance of the statute) the prejudgment remedy.

In reviewing a court's decision on a motion to dismiss a prejudgment remedy, we apply the same standard applicable to review of other motions to dismiss, which in part turns on whether the claim is directed at the court's legal conclusions or its factual determinations. See *State* v. *Bonner*, 290 Conn. 468, 477–78, 964 A.2d 73 (2009). Factual findings underlying a court's decision on a motion to dismiss will not be disturbed unless they are clearly erroneous; however, we review a trial court's ultimate legal conclusion and resulting ruling on the motion de novo. Id., 478.

In the present case, it is undisputed that the plaintiff returned the duly served summons and complaint for which the prejudgment remedy of attachment was allowed on December 16, 2011. The disputed issue is whether the application for prejudgment remedy was granted for purposes of § 52-278j (a) when the court first accepted the parties' stipulated agreement and

issued an order that did not grant any specific prejudgment remedy on May 9, 2011, or when a complete and final order granting the specific prejudgment remedy of attachment was signed and filed by the court on November 16, 2011. We conclude, under the circumstances of this case, that the prejudgment remedy was not granted until November 16, 2011.

On May 9, 2011, the parties first appeared before Judge Maronich for a hearing on the plaintiff's application for a prejudgment remedy of attachment. The parties informed the court at that time that the defendants had agreed to stipulate to a prejudgment remedy of attachment in the amount of $1,259,377.60. During the hearing, the court indicated to the parties that the body of the proposed order submitted with the application failed to state what assets would be subject to attachment and that a full description of any real property subject to attachment would need to be included in the body of the order. In ruling on the application, the court did not sign the order of attachment submitted with the application. Rather, the court issued an order that states that it "hereby orders prejudgment remedy" in the amount of $1,259,377.60, but the court failed to indicate the nature of that remedy, i.e., whether the remedy granted was one of attachment, foreign attachment, garnishment, replevin or some combination thereof. See General Statutes § 52-278a (d).

Although our review of the transcript of the May 9, 2011 hearing does not reveal any express statement by the court that it was issuing a conditional order with respect to the application for prejudgment remedy, the parties later indicated at the hearing on the motion to dismiss before Judge Pavia that they had understood that the court's May 9, 2011 order granting the application for prejudgment remedy was conditioned upon the plaintiff submitting an amended order containing the missing property descriptions. In particular, we note that the defendants' counsel, in reference to the May 9, 2011 order, stated to Judge Pavia: "I would agree, Your Honor, that the judge instructed the plaintiff that *the order was ineffective and need to be amended.*" (Emphasis added.)

Despite that admission, the defendants argue on appeal that once the stay of the court's May 9, 2011 ruling expired, the order became effective and "[the plaintiff's] difficulty in obtaining an accurate real property description had no effect on its ability to attach the bank accounts, equipment, and personal property of the defendants." At that point in time, however, the court had not signed any order of attachment. The court's May 9, 2011 order indicated its intent to grant a prejudgment remedy, but failed to state what form of prejudgment remedy it was granting or what property was subject to the order. An order containing that information was not signed and filed by the court until

November 16, 2011.

We conclude that, at the time Judge Pavia rendered her decision denying the pretrial motion to dismiss, there was not yet an effective, final order regarding the application for prejudgment remedy. Judge Maronich was still in the process of reviewing the real property descriptions submitted by the plaintiff in its second proposed order. The mandate in § 52-278j (a) that the summons and complaint be filed within thirty days of the granting of a prejudgment remedy was therefore not yet applicable, and the court properly denied the defendants' pretrial motion to dismiss on that basis. After the final order setting forth a detailed description of the property subject to attachment was signed and filed by Judge Maronich on November 16, 2011, the plaintiff served and returned its summons and complaint by December 16, 2011, which was within thirty days and in full compliance with § 52-278j (a). Thus, the court also properly denied the defendants' posttrial motion to dismiss the prejudgment remedy to the extent that it claimed a failure to comply with § 52-278j (a). Accordingly, we reject the defendants' claim.

II

The defendants next claim that the court improperly admitted Longman's deposition transcript into evidence at trial despite the fact that the plaintiff never filed a sealed copy of the deposition with the court in accordance with Practice Book § 13-30 (e).[6] The plaintiff argues that the defendants' claim lacks merit because Longman's deposition was never made a full exhibit as suggested by the defendants, but was used during trial solely for the purpose of impeachment and was marked for identification only. According to the plaintiff, Practice Book § 13-30 (e) is inapplicable, and even if the plaintiff's use of the unsealed deposition transcript at trial was improper, the defendants have not shown that they suffered any prejudice. The defendants cannot prevail on this claim because the transcript was never admitted into evidence.

Our standard of review on evidentiary claims is well settled. A trial court's evidentiary ruling is entitled to great deference, and, if premised on a correct view of the law, is subject to review for an abuse of discretion. *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007). To the extent that an evidentiary claim is premised, however, on the trial court's interpretation of a provision of the Code of Evidence, our rules of practice, or a statute, a question of law is presented over which our review is plenary. See id.; see also *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 599 n.7, 717 A.2d 713 (1998). In the present case, the defendants' claim calls on us to examine whether the court properly allowed a deposition transcript that was not sealed and filed with the court in accordance with Practice Book § 13-30 (e) to be used at trial for impeach-

ment purposes. To the extent that this requires us to construe the applicability of Practice Book § 13-30 or other provisions of our rules of practice to the facts and circumstances presented, our review is plenary.

The following additional facts are relevant to our consideration of the defendants' claim. At trial, the defendants elicited testimony from Longman suggesting that the solar panels provided to the defendants by the plaintiff were defective. Specifically, Longman testified on direct examination that the panels operated at a reduced capacity than was indicated in the specifications provided by the plaintiff.[7] The plaintiff, on cross examination, sought to impeach Longman by confronting him with a statement that he allegedly made during his deposition that he could not recall at that time whether the solar panels had met the specifications requested by Solaire.

When it became clear to the defendants that the plaintiff was going to try to impeach Longman by confronting him with his prior deposition testimony, the defendants raised several objections, including that the deposition transcript thus far had not been admitted into evidence and that the plaintiff was utilizing an unsealed and unauthenticated document. The defendants did not reference Practice Book § 13-30 (e) or any other rule of practice or statute in support of their objection.

After briefly referring to the Practice Book, the court stated that it could not find any requirement that the transcript be sealed and overruled the defendants' objection on that ground. The court instructed the plaintiff that the deposition still needed to be marked for identification purposes. The deposition was marked for identification as plaintiff's exhibit 26. The defendants continued to object to the use of the deposition, arguing that it did not contain a proper certification and was not properly prepared in other respects. The court ruled that the defendants, who admitted to having received a copy of the deposition prior to trial, had waived any such errors by operation of Practice Book § 13-31 (c) (4), which provides: "As to completion and return of deposition: Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, endorsed, transmitted, filed or otherwise dealt with by the officer are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained." The plaintiff proceeded to ask Longman a series of questions, while at times referencing portions of his pretrial deposition. The defendants, on redirect, also referred back to the deposition. Longman's deposition was never offered by either party and it was not admitted by the court as a full exhibit.

We reject the defendants' claim that the plaintiff's use of the deposition in this manner was improper under

Practice Book § 13-30. Practice Book § 13-30 is a technical rule setting forth various procedures to be followed in conducting a pretrial deposition. Subsection (e) of § 13-30 provides in relevant part that the person that recorded the deposition testimony "shall then securely seal the deposition in an envelope endorsed with the title of the action, the address of the court where it is to be used and marked 'Deposition of (*here insert the name of the deponent*),' shall then promptly deliver it to the party at whose request it was taken and give to all other parties a notice that the deposition has been transcribed and so delivered. The party at whose request the deposition was taken shall file the sealed deposition with the court at the time of trial." (Emphasis in original.)

Practice Book § 13-30 does not specify any sanction for a failure to follow the procedures set forth therein, and the defendants have provided no authority, nor have we found any, for the proposition that a trial court loses its inherent discretion to permit a deposition to be used during trial in the manner it was used here if it was not sealed and filed in accordance with Practice Book § 13-30 (e).[8] To the contrary, Practice Book § 13-31 (a) provides in relevant part that "[a]t the trial of a civil action . . . any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were there present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions: (1) *Any deposition* may be used by any party *for the purpose of contradicting or impeaching the testimony of the deponent as a witness*." (Emphasis added.)

In the present case, the plaintiff sought to use Longman's deposition only to confront Longman with a prior inconsistent statement he made during that deposition. The plaintiff never sought to admit the deposition into evidence as a full exhibit as extrinsic evidence of that statement. See Conn. Code Evid. § 6-10 (c).[9] A party is generally free to confront a witness testifying in court with any prior inconsistent statement allegedly made out-of-court, regardless of whether that statement is oral or written, sworn or unsworn or in compliance with Practice Book § 13-30.[10] In sum, we reject the defendants' claim that the court improperly allowed the plaintiff to confront Longman with his deposition testimony for impeachment purposes simply because a sealed copy of the deposition was not filed with the court prior to trial as provided in Practice Book § 13-30 (e).

### III

Finally, the defendants claim that the court improperly denied their third special defense by determining that the operative complaint alleged legally sufficient

causes of action against each of the defendants for breach of contract.[11] As to Solaire, the defendants argue that the plaintiff failed to allege in the complaint that the parties had formed an agreement, failed to allege performance by the plaintiff and failed to identify a specific contractual provision breached by Solaire. As to Longman, the defendants again argue that the complaint contains no allegation that the plaintiff had performed, and also argue that the complaint contains no specific allegation of consideration. We are not persuaded.

"[I]t is well settled that [t]he failure to include a necessary allegation in a complaint precludes a recovery by the plaintiff under that complaint . . . . As a result, [i]t is incumbent on a plaintiff to allege some recognizable cause of action in his complaint. . . . Yet [w]e previously have recognized [that] . . . if the complaint puts the defendant on notice of the relevant claims, then a plaintiff's failure specifically to allege a particular fact or issue is not fatal to his claim unless it results in prejudice to the defendant." (Citations omitted; internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 130–31, 2 A.3d 859 (2010).

Our review of a trial court's determination regarding the legal sufficiency of a pleading is plenary. See *Larobina* v. *McDonald*, 274 Conn. 394, 403, 876 A.2d 522 (2005). In exercising that review, "[w]e take the facts to be those alleged in the complaint . . . and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . [W]e assume the truth of both the specific factual allegations and any facts fairly provable thereunder." (Internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC*, supra, 298 Conn. 130. Moreover, we are mindful that "pleadings must be construed broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Connecticut Coalition for Justice in Education Funding, Inc.* v. *Rell*, 295 Conn. 240, 253, 990 A.2d 206 (2010).

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *Hawley Avenue Associates, LLC* v. *Robert D. Russo, M.D. & Associates Radiology, P.C.*, 130 Conn. App. 823, 832, 25 A.3d 707 (2011). With respect to Solaire, the plaintiff alleged in its operative complaint that "the plaintiff, at the request of Solaire, sold solar modules . . . to Solaire for the reasonable value of $1,534,337.60," that "[the plaintiff] delivered and Solaire accepted [the solar modules]," that Solaire paid the plaintiff $200,000 toward the sum owed, but "failed to pay the remaining $1,334,337.60 owed to the plaintiff for the [solar panels]," that "Solaire breached the contractual agreements

by its failure to pay the plaintiff the sum owed," and that, as a result of Solaire's breach of its contractual obligations, "the plaintiff has suffered damages in excess of $1,334,337.60 plus interest, costs and attorney's fees."

Viewed in their most favorable light and construed broadly and realistically, these allegations are sufficient to establish that the plaintiff and Solaire had formed a contract for the sale of goods, that the plaintiff had performed its obligation under that contract by delivering the requested goods, and that Solaire breached the contract when it failed to pay for the goods, thereby resulting in damages to the plaintiff. The operative complaint alleged a legally sufficient cause of action for breach of contract against Solaire, and we reject the defendants' argument to the contrary.

With respect to Longman, the plaintiff incorporated all allegations against Solaire and, in addition, alleged that "Longman executed an 'unconditional guaranty' ensuring Solaire's prompt payment," that "Longman breached his agreement to personally guaranty Solaire's prompt and full payment to [the plaintiff]," and that, as a result, the plaintiff "has suffered damages in excess of $1,334,337.60 plus interest, costs and attorney's fees." Viewed in their most favorable light and taking into account not only the specific factual allegations pleaded but those facts necessarily implied and provable thereunder, the allegations are sufficient to establish that Longman executed a contract personally guaranteeing Solaire's payment for solar panels provided by the plaintiff, that the plaintiff performed its obligation by providing the solar panels to Solaire on credit, and that Longman breached the agreement by failing to pay the plaintiff when Solaire defaulted on its obligation to pay, resulting in damages to the plaintiff. Moreover, an allegation of legal consideration, which consists of " 'a benefit to the party promising, or a loss or detriment to the party to whom the promise is made' "; *Osborne* v. *Locke Steel Chain Co.*, 153 Conn. 527, 531, 218 A.2d 526 (1966); can reasonably be inferred from the allegation that Longman executed the guaranty so that his company could order products from the plaintiff on credit. The operative complaint alleged a legally sufficient cause of action for breach of contract against Longman. In sum, the court correctly rejected the defendants' third special defense

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 52-278j (a) provides: "If an application for a prejudgment remedy is granted but the plaintiff, within thirty days thereof, does not serve and return to court the writ, summons and complaint for which the prejudgment remedy was allowed, the court shall dismiss the prejudgment remedy."

[2] The relevant colloquy occurred as follows:

"The Court: What's the attachment for? Is it real estate or is it—

"[The Defendants' Counsel]: Some of both, your honor.

"The Court: Some of both.

"[The Defendants' Counsel]: I don't think it was identified in the application.

"[The Plaintiff's Counsel]: Yeah. Any and all assets, Your Honor.

"The Court: Okay. All right. Does the order specifically have the real estate that's being attached because that's got to be in the body of the order?

"[The Defendants' Counsel]: It would have to be amended, Your Honor.

"[The Plaintiff's Counsel]: Yeah. We'll have to amend—

"[The Defendants' Counsel]: I don't know if—

"[The Plaintiff's Counsel]: —that and submit it.

"[The Defendants' Counsel]: —they've done any discovery in that vein, Your Honor.

"The Court: All right. Well, I suppose if we could—we could just prepare a regular straight order. And if you wanted to come back in at some point to include real estate, and you have an agreement, we could do that as well.

"[The Plaintiff's Counsel]: That's fine with us.

"The Court: Okay."

[3] The parties had requested the stay because they purportedly were "on the cusp" of a settlement.

[4] Although the trial court file contains no express written order or notice from Judge Maronich regarding the August 5, 2011 proposed order, Judge Pavia references Judge Maronich's actions in her subsequent September 6, 2011 order.

[5] In a posttrial motion, the defendants renewed their claim that the prejudgment remedy should be dismissed for failure to serve and return to court the summons and complaint within thirty days of the granting of the prejudgment remedy. The motion was denied by the court, *Ozalis*, *J.*, which explained that a prejudgment remedy was not granted by Judge Maronich until November 16, 2011, and that the plaintiff timely served and returned process thereafter.

[6] Practice Book § 13-30 (e) provides: "The person recording the testimony shall certify on the deposition that the witness was duly sworn by the person, that the deposition is a true record of the testimony given by the deponent, whether each adverse party or his agent was present, and whether each adverse party or his agent was notified, and such person shall also certify the reason for taking the deposition. The person shall then securely seal the deposition in an envelope endorsed with the title of the action, the address of the court where it is to be used and marked 'Deposition of (*here insert the name of the deponent*),' shall then promptly deliver it to the party at whose request it was taken and give to all other parties a notice that the deposition has been transcribed and so delivered. The party at whose request the deposition was taken shall file the sealed deposition with the court at the time of trial. . . ." (Emphasis in original.)

[7] The relevance of such testimony is not entirely clear because the defendants had never asserted by way of special defense or counterclaim that the solar panels provided by the plaintiff were defective or that such defects justified nonpayment.

[8] The requirement that a party file with the court the sealed copy of a deposition helps to ensure its authenticity and prevents alteration of its content, which would be particularly important if a deposition was to be admitted in full at a trial for use as substantive evidence. Documents marked at trial only for identification and not entered as full exhibits, however, are not substantive evidence for consideration by the trier of fact. See *State* v. *Kamel*, 115 Conn. App. 338, 345, 972 A.2d 780 (2009); see also C. Tait & E. Prescott, Tait's Handbook of Connecticut Evidence (5th Ed. 2014) § 1.29.3, p. 93 ("[e]xhibits for identification are not in evidence"). In such instances, the importance of any safeguards afforded by Practice Book § 13-30 (e) is significantly diminished.

[9] Section 6-10 of the Connecticut Code of Evidence provides:

"(a) Prior inconsistent statements generally. The credibility of a witness may be impeached by evidence of a prior inconsistent statement made by the witness.

"(b) Examining witness concerning prior inconsistent statement. In examining a witness concerning a prior inconsistent statement, whether written or not, made by the witness, the statement should be shown to or the contents of the statement disclosed to the witness at that time.

"(c) Extrinsic evidence of prior inconsistent statement of witness. If a prior inconsistent statement made by a witness is shown to or if the contents of the statement are disclosed to the witness at the time the witness testifies, and if the witness admits to making the statement, extrinsic evidence of the statement is inadmissible, except in the discretion of the court. If a prior

inconsistent statement made by a witness is not shown to or if the contents of the statement are not disclosed to the witness at the time the witness testifies, extrinsic evidence of the statement is inadmissible, except in the discretion of the court."

Thus, in accordance with the code, in confronting a witness about a prior inconsistent statement made at a deposition, the alleged inconsistent statement must first be disclosed to the witness prior to seeking to admit any extrinsic evidence of the statement such as transcript of the deposition. This is because, if, upon disclosure of the statement, the witness admits to making the statement, then it is not necessary to admit the transcript or any other extrinsic evidence.

[10] Because the plaintiff never sought to admit the deposition transcript, we need not decide whether it was properly admissible as a full exhibit.

[11] The defendants asserted in their third special defense that "[t]he allegations of the [c]omplaint and each count thereof fail to state a claim against the [defendants] upon which relief can be granted." In its decision, the court concluded that the third special defense had no merit. First, the court reasoned that the defendants had waived their right to challenge the legal sufficiency of the allegations in the complaint by failing to file a motion to strike any count prior to filing their answer to the complaint. The court further reasoned that, even if the defendants properly could assert a claim of legal insufficiency by way of a special defense, the plaintiff properly had asserted in the operative complaint legally sufficient causes of action for breach of contract against both defendants. We recognize that there is a split of authority among our trial court judges with respect to whether failure to state a claim upon which relief can be granted constitutes a valid special defense. Because, in the present case, we agree with the trial court that the complaint contained sufficient allegations to plead an action for breach of contract against the defendants, we leave for another day whether a party should be permitted to assert by way of special defense that a complaint or count therein fails to state a claim upon which relief may be granted and, if so, under what circumstances.

———————————————